FOURNET, Justice.
 

 The defendant, Melvin Everett Kifer, has appealed from his conviction without capital punishment and sentence to life imprisonment in the state penitentiary on a charge by indictment of having committed the crime of rape.
 

 The defendant filed two motions to quash the indictment: One is based on the ground that the grand jury, which indicted him, was not drawn as directed by law, in that the names of the grand jurors were drawn from an open box and not from an envelope containing the names of the jury venire as the law directs; and the other is based on the ground that the district attorney and his assistant were in the grand jury room while the grand jury was deliberating and voting upon the indictment returned by them in this case.
 

 The evidence on the first motion to quash the indictment shows that, in drawing the grand jurors, who later indicted the defendant in this case, the deputy sheriff took the envelope out of the box, emptied the contents thereof into the box, and then drew the grand jury therefrom.
 

 This identical question was presented to this court for consideration in four cases at
 
 *677
 
 about the same time, in the year 1907, and was decided by a divided court in the case of State v. Mitchell, 119 La. 374, 44 So. 132, as follows:
 

 “The statutory requirement that the slips on which are written the names of grand jurors shall be drawn from the envelope in which they have been placed by the jury commission is merely directory; and the drawing of such slips from a box provided for the purpose is not per se such an irregularity as will warrant the quashing of the venire.” (Syllabus No. 1.)
 

 See, also, State v. Lively, 119 La. 364, 44 So. 128; State v. Freeman, 119 La. 663, 44 So. 334; State v. Matthews et al., 119 La. 665, 44 So. 336.
 

 But it is well to note that the organ of the court in the Mitchell Case concluded the opinion on this point with the following:
 

 “In the instant case the common practice of drawing the names of grand jurors from a box was followed. This practice is, however, contrary to the letter of the statute, which requires such drawing to be from the envelope.
 
 There is no good reason why this provision of law should not he observed and enforced in the district courts throughout the state.”
 
 (Italics ours.)
 

 The history and purpose of the requirement of the statute is succinctly stated in the dissenting opinion of the court in the case of State v. Freeman, supra, 119 La. 663, 44 So. at pages 334, 335:
 

 “A host of decisions could be cited to the effect that the indictment will not be quashed because of irregularities in the organization of the grand jury (E. of P.P. verbo ‘Indictment’; Cyc. verbo ‘Grand Juries’); but' on examination it will be found that those decisions have reference to unimportant details, or are not all in point because rendered under such a statute as section 15, quoted supra. On the other hand, a large number of decisions hold that the requirements of a statute prescribing the manner of drawing the grand jury must be observed under penalty of the nullity of the indictment. For instance, in State v. Texada, 19 La.Ann. 436, the indictment was quashed because in impaneling the grand jury the sheriff had simply read the names from the list, instead of having drawn them from the box.
 

 “As a matter of course, the statute must be complied with; else the Legislature would be a mere advisory board to the court; and, as a matter of course, also, the statute has a sanction; and that sanction is not the impeachment of the judge, but the nullifying or undoing of his act. An indictment should not be set aside, however, for the nonobservance of every insignificant detail, and therefore the whole question resolves itself into whether the requirement that has been disregarded in the particular case is one of importance, or of no importance. I think the particular requirement which the court disregarded in this case must be classed among those to which the Legislature attached importance.
 

 “In saying this, I base myself upon the fact that its adoption has been the outcome of gradual elaboration on the part of the Legislature; in other words, that it is the final result of repeated amendments,
 
 *679
 
 through a long series of years by way of betterment of the jury law, as the following 'will show.
 

 “Act No. 110 of 1868, p. 141, required the jury commissioners to place in a box, on separate slips of paper, the names of the persons on the venire from which would have to be drawn the grand and petit juries at the next ensuing term of court, and required the sheriff to draw the grand jurors from the box'. It made no provision for the publication of the venire, or for the locking and sealing of the box, or for its safe-keeping.
 

 “Act No. 44 of 1877, 1st Sess. p. 55, improved upon the act of 1868 by requiring the slips of paper to be placed in an envelope,- and the envelope to be first sealed, and then placed in a box, and this box to be locked and sealed and confided to the safe-keeping of the clerk, and the list to be published. It was however, very vague in its prescription of how the grand jury should be drawn, simply requiring that it be from the box; thus giving rise to the inference that the envelope might be emptied into the box, and the jury drawn from the box.
 

 “Act No. 89 of 1894, p. 121, was similar in its provisions to the act of 1877, except that it required that there should be two venires and two envelopes — one for the grand jury and one for the petit jury — instead of only one, as theretofore, for both juries, and required the grand jury to be drawn ‘from the list of grand jurors,’ instead of, as theretofore, ‘from the box.’
 

 •“Act No. 99 of 1896, p. 144, was similar in its provisions to the act of 1894, except that it reverted to the single venire and single envelope plan of the act of 1877; and except, also, that, in prescribing the mode of drawing the grand jury, instead of using the vague expression ‘from the list,’ it provided explicitly that the drawing should be ‘from the envelope.’
 

 “Act No. 135 of 1898, p. 216, our present jury law, made a wide departure in the manner in which the commissioners should choose the venire of the grand jurors— requiring that they ‘select’ them, and, as much as possible, take them from the different parts of the parish, instead of as theretofore, drawing them; and that the venire be of only 20, and it went back to the two venire and two envelope system of the act of 1877; and, finally, it required, as had done the act of 1896, that the drawing of the grand jurors should be ‘from the envelope.’
 

 “A requirement thus gradually evolved after long and repeated efforts at improvement, and expressed in terms of command, should not be lightly waived aside as being merely directory. A statute is never held to be merely directory when the effect would be ‘to make a new law, instead of the one made by the Legislature.’ 26 A. & E.E. 688. The ruling complained of in this case has the effect of making a new law, since it sets aside the statute prescribing that the drawing shall be ‘from the envelope,’ and provides that the drawing may be ‘from the box.’ It sets aside the act of 1898 on this point of the manner of drawing the jury, and reinstates the acts of 1868 and 1877, long since abolished by the Legislature.
 

 
 *681
 
 “Another fact going to show the importance of the requirement in question is that, by permitting the drawing from an open box, instead of from the envelope, the sheriff’s opportunity for selecting the jury is increased, it being easier to see and read and select the names as they lie scattered in the open box than as inclosed in the envelope; and thus the element of chance which, by requiring that the drawing be from the envelope the Legislature has manifestly aimed to conserve is decreased. True, the margin thus afforded the sheriff is but narrow. Yet narrow as it is, it is one that the statute has clearly provided against his enjoying. And it is one which, if availed of, would cause one or several men to be on the grand jury who would not have been on it if the statute had been observed, and even a single man on a grand jury may change results.
 

 “Let it be noted that the requirement in question is about the most important in connection with the drawing of the jury, and that therefore, if it may be disregarded, all the others may, in like manner, and for the same reason, be disregarded, and the court proceed to draw the jury after a manner of its-own invention. Put aside the envelope, and there is no more reason for adopting the box method than any other, and the sheriff may hold the slips in his hand and read them off in the manner condemned by this court in the Texada Case, supra.
 

 When the Legislature adopted the Code of Criminal Procedure in 1928, it had in mind the various changes recited in the foregoing, as well as the interpretation of this court on the subject-matter in the cases above referred to, and it again expressed its will, using mandatory and not directory language. Article-,184 of the Code of Criminal Procedure provides that:
 

 “The judge shall select from the list of grand jurors a suitable person to act as foreman of the grand jury, and the sheriff, under the direction of the court,
 
 shall
 
 draw by lot from the envelope indorsed ‘list of Grand Jurors,’ the names therein until eleven answer, who, with said foreman, shall constitute the grand jury.” (Italics oúrs.)
 

 Our attention has -been called by counsel for the state to the fact that the defendant alleged injury and fraud in his motion, but did not introduce any evidence to substantiate the same, and refer us to article 203 of the Code, which reads as follows:
 

 "It shall not be sufficient cause to challenge the venire
 
 selected for any session of the court or portion thereof or for service at any time in any parish or district of this State,
 
 or to set aside the venire,
 
 because some of the jurors on the list are not qualified to act, nor because of any other defect or irregularity in the manner of selecting the jury, or in the composition, summoning'or proceedings of the Jury Commission,
 
 unless some fraud has been practiced or some great wrong committed that would work irreparable injury;
 
 provided, that it shall be good ground to challenge, for cause, any juror who is not qualified by law to act.” (Italics ours.)
 

 The article of the Code of Criminal Procedure is but a replica of section 15 of Act No. 135 of 1898, and we think the answer to the contention of the state is so- well and logically expressed in the
 
 *683
 
 opinion of the organ of the court in the case of State v. Lively, supra, 119 La. 364, page 369, 44 So. 128, 130, that we adopt it here.
 

 “But
 
 the defendant here is making no attempt to set aside the venire.
 
 He is complaining that the slips bearing the names of the grand jurors were drawn out of an open box, instead of from a closed envelope, as the law requires. Section 15 of Act No. 135, p. 223, of 1898, is therefore inapplicable, and we know of no law, and have been referred to none, purporting to cure an irregularity, if it can be so called, of that character. Referring, again, to the provisions of the act which have been cited, we note that they prescribe, with great particularity and precision, the method by which the grand and petit jurors are to be selected, and declare that the officers designated ‘shall’ do and perform the different acts included in that method. And, as they provide that the names of 20 citizens, selected to serve as grand jurors, ‘shall’ be written on slips of paper, and that the commissioners ‘shall’ place the slips in an envelope, seal the same, and indorse thereon the words, ‘List of Grand Jurors,’ it is to be presumed that it was intended that that course should be pursued, not at the discretion of the commissioners or the clerk or the judge, but as a duty imposed upon public officials, participating, as parts, in the operation of the machinery established for the administration of justice, and affecting, in its operation, the lives, liberty, and fortunes of all the citizens of the community. And so with regard to the drawing of the names. If it had been intended that the names should be drawn from an open box, why require that they should be placed in a sealed envelope and drawn from the envelope? And, if the law is to be regarded as merely directory, in that respect, at what point, if at all, shall we cease so to regard it? Would it be competent for the judge and the sheriff and the jury commission to adopt a simpler method of their own, and would it be legal to try, convict, and execute a man according to such method? We think not. The selection of a grand jury is a very serious matter, and the obvious purpose of the General Assembly was to place it, as far as possible, beyond interested control. It was not the purpose that the sheriff should have it in his power to read the names on the slips to be drawn by him. And, whether the plan adopted to defeat that result is good or bad, it is the plan prescribed by law, and the courts have no authority to countenance the substitution even of a better one.” (Italics ours.)
 

 With due deference to our predecessors, we are of the opinion that it was clearly the Legislature’s intent to make the provisions of article 184 of the Code of Criminal Procedure mandatory and not directory. Moreover, we think that the procedure in all criminal cases should be uniformly followed by all the courts of the state, because if the officials were permitted to depart from the clear mandate of the law and substitute a method of their own, as was done in the case at bar, there would be nothing to prevent each official in the several districts of the state from adopting a totally different method of selecting a grand jury. This, we think, is in direct violation of not only the letter but also
 
 *685
 
 •the spirit of the law, as well as the funda-mental principles of our criminal procedure, .and “ * * * constitutes one of those ir-regularities so gross, so at variance with •the strict mandate of the law, that it amounts to a wrong per se.” State v. Tate, 185 La. 1006, 171 So. 108, 113. See, also, State v. Love, 106 La. 658, 659, 31 So. 289.
 

 We conclude that the defendant was indicted by an illegally impaneled grand jury and, consequently, in contemplation of law, there was no grand jury — hence, no indictment upon which a legal conviction -could be predicated.
 

 Being of the opinion that the indictment •should have been quashed, ordinarily it would be unnecessary for us to pass upon the merits of the other bills of exceptions reserved to the ruling of the court, unless it appears that they may recur in the event defendant should be properly indicted and -tried again, but the bill of exception on the -defendant’s motion to quash the indictment, •on the ground that the district attorney and 'his assistant remained in the grand jury room while they were deliberating and voting upon the indictment found by them in this case, is of such importance that we -.shall briefly discuss the question here.
 

 Counsel for defendant sought to prove the allegations of the motion by the testimony of the grand jurors, which was objected to by counsel for the state on the grounds set forth in articles 470 and 471 •of the Code of Criminal Procedure. The trial judge sustained the objection and from his ruling, counsel for defendants reserved .a bill of exception.
 

 Article 19 of the Code of Criminal Procedure provides that “the District Attorney shall be allowed at all times to appear before the grand jury for the purpose of giving any information relative to any matter cognizable by them;
 
 but no district attorney or other person shall be present during the deliberations of the grand jury on their findings’’
 
 (Italics ours.)
 

 Prior to the adoption of the Code of Criminal Procedure of 1928, this court, in the case of State v. Hopkins, 115 La. 786, 40 So. 166, passed upon the identical question presented here, and ruled that “the testimony of a grand juror cannot be introduced to impeach the indictment.”
 

 The defendant, being accused of a capital crime, could only be prosecuted by indictment by a grand jury (section 2, article 1, Constitution of 1921), which, as we have just decided, must be duly and legally impaneled; and under the provisions of article 19 of the Code, he was entitled to have the grand jury deliberate on his case without the presence of any one, not excepting even the district attorney.
 

 We are unable to conceive in what manner the defendant could have proven that the district attorney had been present at the deliberations of the grand jury under their findings in this case, or any other case for that matter, by any other means than by the testimony of the district attorney or by the testimony of the members of the grand jury, if articles 470 and 471 of the Code of Criminal Procedure were interpreted by this court to mean that a grand juror or a district attorney is not competent to testify in a case of this kind.
 

 
 *687
 
 The rule forbidding the juror, whether grand or petit, from impeaching his finding or verdict, is based on public policy, but we think it is equally a matter of public policy, besides being a right expressly granted the accused by law, that “no district attorney or other person shall be present during the deliberations of the grand jury on their findings.” '
 

 The reason for this rule is that if the district attorney or'any one else should be permitted to be present during the deliberations of a grand jury, the vote of members of the grand jurors might be influenced by his presence, and it is our opinion that public policy is more concerned in seeing that no one should interfere with the deliberations of a grand jury during its findings than in preventing its members or the district attorney from testifying in cases of this kind. Moreover, we think that it was not the intention of the Legislature to preclude such testimony under the provisions of articles 470 and 471 of the Code of Criminal Procedure.
 

 We therefore conclude that the trial judge should have permitted the grand jurors to testify as to whether or not the district attorney was present during their deliberations on the finding of the indictment, which charged the defendant with the crime of rape.
 

 Bill of exception No. 3 was taken to the ruling of the trial court in refusing to sustain a challenge for cause of a juror by the defense. As this matter will probably not recur in another trial of the accused, it is unnecessary to further consider the merits of the bill.. Suffice it to say that the “trial judge has discretion in passing upon qualifications of jurors, and his rulings will not be set aside unless error is manifest.” State v. Collier, 161 La. 856, 109 So. 516.
 

 Bill of exception No. 4 was taken to the following remark made by the district attorney in his final argument to the jury: “Are there any people in this courthouse who don’t wish in their souls that the gun had not snapped” ?
 

 Immediately upon the defendant’s objection, the district attorney withdrew the remark, and the court gave instructions that the withdrawal of the remark be shown in the record, and “charged the * * * jury to confine themselves to their findings in this case to the evidence alone and the’ law applicable thereto as charged by the court.”
 

 The point made by counsel for defendant is that the remark of the district attorney was ex parte; was neither argument, nor deduction, but was clearly and purely prejudicial, contrary to the provisions of article 381 of the Code of Criminal Procedure. Plowever, it is unnecessary for us to determine whether or not reversible error was committed in the instant case as the matter will probably not recur in the trial of the defendant if he should be properly indicted and tried again.
 

 The bill of exception reserved to the ruling of the court refusing to grant defendant’s motion for a new trial covers the same grounds set forth in the bills of exception already disposed of by us.
 

 
 *689
 
 For the reasons assigned, it is ordered, adjudged, and decreed that the verdict and sentence appealed from be and are hereby annulled and set aside, and the indictment of the grand jury, charging the defendant with the crime of rape, be and it is hereby declared null and of no effect.
 

 O’NIELL, C. J., and HIGGINS, J., absent.