192 So.2d 103

**STATE of Louisiana**

**v.**

**Daryl EVANS and Bernard Butler.**

No. 48163.

Nov. 7, 1966.

Rehearing Denied Dec. 12, 1966.

F. Irvin Dymond, G. Wray Gill, George M. Leppert, New Orleans, for appellants.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Jim Garrison, Dist. Atty., Louise Korns, Asst. Dist. Atty., for appellee.

HAMITER, Justice.

The instant appeal is by Daryl Evans and Bernard Butler who were convicted of the crime of murder, under the felony-murder doctrine, and were sentenced to death by electrocution. Allegedly, the offense committed, which occurred in the City of New Orleans on the night of June 21, 1963, was the fatal shooting of one Norris J. Rabalais, a New Orleans Public Service bus operator, during an attempted armed robbery of such person by the defendants.

Following the trial thirty-nine bills of exceptions were perfected. However, not all of them are urged on this appeal.

Defendants' presentation here, in brief and by oral argument, was not made (as is customary) on the basis of the perfected bills. Rather, their counsel set forth and argued twelve "specifications of error". We prefer to and shall discuss the "specifications" according to the individual bills of exceptions urged, some which may be grouped for that purpose.

*Bills of Exceptions Nos. 6, 14, 21 and 23.*

These bills were taken to the court's permitting two witnesses, Glenda Dale Jenkins and Clyde Coombs, to testify as to the commission by these defendants of a prior armed robbery of another bus

operator at a location in the vicinity of the instant shooting, and to their attempted armed robberies of several places of business in the general locale of defendants' residences.

■ Generally evidence of other crimes, even those similar in nature, is not admissible to prove the offense charged. However, there are well recognized exceptions to this rule, one being that such evidence is admissible to prove intent when it is a necessary ingredient of the crime charged. Thus, in LRS 15:445 and 446 it is stated: "In order to show intent, evidence is admissible of similar acts, independent of the act charged as a crime in the indictment, for though intent is a question of fact, it need not be proven as a fact, it may be inferred from the circumstances of the transaction." LRS 15:445. "When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged." LRS 15:446. See also State v. Wagner, 229 La. 223, 85 So.2d 272 and State v. Allen, 243 La. 698, 146 So.2d 407.

■ Inasmuch as the charge of murder was made herein under the felony-murder doctrine, it was not necessary to prove intent as to the homicide. However, it was required of the state to establish the armed robbery intent, particularly since the instant attempted robbery had not actually been consummated but was frustrated by the operator's refusing to hand over the money. It was incumbent on the state to show, in other words, that the killing occurred while the defendants were attempting an armed robbery. Therefore, evidence of the other crimes referred to, they having been similar in nature, indicative of a pattern, and reasonably close in point of time to the crime charged, were admissible to disclose such intent.

These bills are not well founded.

### Bills of Exceptions Nos. 7, 10 and 12.

Bills Nos. 7 and 10 were reserved when the trial court refused to excuse for cause, on motion of the defendants, two prospective jurors. No. 12 was taken when a third proposed juror was excused for cause on motion by the state and over a defense objection.

This court has heretofore said: "In reviewing the judge's ruling it is well to observe preliminarily that, under our law, the excusing of petit jurors for cause is within the discretion of the trial judge. Article 345, Code of Criminal Procedure (R.S.

15:345); 1 Marr's Criminal Jurisprudence 701, sec. 462; State v. Kifer, 186 La. 674, 173 So. 169; 110 A.L.R. 1017 and State v. Hoover, 203 La. 181, 13 So.2d 784. Hence, the question presented under these bills is whether the judge abused his discretion in denying the challenges for cause." State v. Weston, 232 La. 766, 95 So.2d 305. See also State v. Rogers, 241 La. 841, 132 So.2d 819.

■ The mentioned bill No. 7 relates to the court's refusal to excuse prospective juror Alvin Weddle for cause. Weddle was a long-time New Orleans Public Service employee, and it was the contention of the defendants that because of this fact he might be embarrassed and could not give the defendants a fair and impartial trial. But the testimony elicited on the voir dire does not reveal that he was even a bus or car operator. Nor does it show that he knew the deceased or any of the latter's former acquaintances.

Moreover, the answers given by Weddle on his voir dire indicated that in his opinion his employment would not affect in any way his "activities as a juror". And, as pointed out in the trial court's per curiam, there was no evidence to show that the fact of the employment would influence his verdict. We cannot conclude, therefore, that the trial judge abused his discretion in denying the challenge for cause as to this juror.

■ Likewise, our review of the testimony of prospective juror Walter Lundin, Jr., to whom bill No. 10 pertains, convinces us that the court correctly denied the challenge of him for cause. Although he expressed his opinion as to the offensive nature of the crime charged (based on information gained through newspaper accounts published at the time of its occurrence), he clearly and emphatically stated that he had no preconceived opinion as to any connection which these two defendants might have had with it or as to their guilt or innocence. Lundin particularly noted that he remembered no names mentioned in the newspaper articles and, on being carefully questioned by the judge, he answered unqualifiedly that he thought he could "sit in judgment in this case and render a verdict according to the law and evidence."

■■ Also, we are of the opinion that the trial judge properly sustained the state's challenge for cause of prospective juror Herbert Hackett, a teacher in the Orleans Parish schools, which is involved in bill No. 12. The following quoted portion of his testimony, given when being examined on his voir dire, clearly showed that he was prejudiced and unable to render a fair and impartial verdict:

"Q. Gentlemen, is there any reason that you can give that you cannot give these defendants, either because of the nature of the charge or for any

other reason, a fair and impartial trial?

A. Well, because of my relationship with children, I feel I would be a little partial to this situation because of the possible ages of the persons concerned.

Q. What is your job with the school board, just as a teacher or are you a coach?

A. I am a teacher and I have a basketball team, the Boy Scouts and things like that.

Q. Do you feel that because of your work with young men and boys and because of the age or apparent youth of the defendants that this would hamper your judgment in the matter?

A. I do."

Defendants contend that later testimony showed that he meant only that he had an unusual amount of compassion for boys of defendants' age (at the time of the offense they were sixteen years old). We think otherwise. It was only in response to defense counsel's questioning that the notion of compassion by Hackett was injected. Nowhere did he deny or qualify his original statement that he felt that his work and his dealings with boys would hamper his judgment in the matter. Besides, as pointed out by the trial judge, the nature of de-

fendants' right on the voir dire is not one to select but one to reject. See State v. Wilson, 240 La. 1087, 127 So.2d 158 and the cases cited therein. Hence, the bill is without merit.

*Bill of Exceptions No. 17.*

This bill was reserved to the court's permitting a police officer to testify over a defense objection as to information he obtained, when he arrived at the scene of the crime, from the deceased who lay mortally wounded in the bus. The basis for the objection was that "this man (the operator) was in such condition from a physical standpoint that it was extremely doubtful that he knew what he was saying or indicating."

In his per curiam to this bill the trial judge observed that the ground for the objection was "mere allegation and conjecture without any proof whatsoever. Hence it is without merit." We think his ruling was correct.

However, in this court the defendants apparently have abandoned such ground; and they now urge, for the first time, that the testimony was improperly admitted as a dying declaration because there was no evidence to show that the deceased knew he was dying or that he firmly believed he was dying. This contention comes too late. Had it been properly made in the district court the prosecution, if it was using

the statement as a dying declaration, would have had the opportunity to lay the foundation for it, as such.

*Bills of Exceptions Nos. 20 and 21.*

These bills were taken when the trial court permitted the state's witness, Glenda Dale Jenkins, a friend of the defendants, to testify as to "inculpatory statements" made to her by the defendant Butler. The statements related allegedly to a prior bus holdup, to two other attempted armed robberies, and to the robbery out of which the instant charge arose. The objections to this evidence were that (1) it was improper to permit introduction of evidence of offenses other than the one with which the defendants were charged, and (2) inasmuch as the statements were in the nature of "confessions" the state was required to lay the predicate to show their free and voluntary nature which it did not do in the present case.

With regard to the first objection we are of the opinion, for the reasons set forth in our discussion above of bills Nos. 6, 14, 21 and 23, that evidence of the other offenses was admissible to show intent.

With regard to the second objection, we mention initially that we entertain some doubt that the rule requiring the laying of a predicate as to the free and voluntary nature of a confession applies to admissions, such as the ones here, made to a friend, relative, etc. Rather, seemingly, it applies to statements that are obtained by law enforcement officials. But, be that as it may, in the instant case we find no merit in this objection, being of the opinion that the case is governed by our decision in State v. Ezell, 189 La. 151, 179 So. 64.

The witness here, Glenda Dale Jenkins, was a lifelong friend of Evans, and she had known Butler for approximately two years. She "went out" with the latter and saw him almost every night. She had lent him the pistol (belonging to her grandfather with whom she lived) with which he allegedly committed the other offenses and which was found at the scene of the instant crime. She stated that after she surrendered the pistol to him he would meet her in the evenings and tell her about what he had done with it the night before.

While the initial questioning of this witness (as in the Ezell case) was not labeled as a "predicate", her testimony as a whole convinces us that the assailed admissions were made to her freely and voluntarily. Moreover, in the Ezell case, in which no predicate was laid, the statements were made to a law enforcement officer who was investigating the crime (not to an intimate friend, as here).

The fact that the free and voluntary nature of the instant admissions was not first shown out of the presence of the jury does not constitute reversible error. See State v. Green, 221 La. 713, 60 So.2d 208.

Of course, during oral argument here, it was suggested that such was improper because the defendants could not then traverse the state's testimony (out of the presence of the jury). But the record of the proceedings attached to these bills contains no suggestion that defendants desired to offer testimony to traverse the evidence. If they had had such intention they could have requested that the jury be retired for this purpose. They did not do so.

### Bill of Exceptions No. 19.

This bill concerns several objections made during the examination of one Eugene Samuels, a witness produced by the state. When called, Samuels refused to be sworn and stated that he did not want to take the stand. Then the judge asked his reasons for such refusal, and he stated only that he had a reason. Upon his being ordered to take the stand, one of defense counsel suggested that the witness might be seeking to invoke the Fifth Amendment. The judge informed counsel that he did not represent the witness, whereupon a motion for a mistrial was made. It was denied.

Thereafter, without being sworn, the witness answered certain questions propounded by the state. As the prosecutor continued with the examination defense counsel objected to his asking leading questions. The judge ruled that the witness was obviously hostile, and he overruled the objection.

During the course of the interrogation the witness said that he had signed a "statement" while in police custody. Later, defense counsel objected to more questioning, asserting that the prosecutor was attempting to testify from the unsworn statement when the witness was refusing to answer. Further objection was made when the judge refused to instruct the jury to disregard the witness' testimony because it was unsworn.

All of these objections are presented in the instant bill.

■■■ Clearly there is no merit in the first objection. It is well settled that the privilege against self incrimination belongs to the witness, and he alone can claim it. See State v. Davis, 208 La. 954, 23 So.2d 801 and State v. Brown, 221 La. 394, 59 So.2d 431. The witness Samuels did not claim it. Therefore, the court's ruling was patently correct.

■■■ Nor do we find any error in the ruling which permitted the district attorney to interrogate Samuels as a hostile witness. Obviously he was hostile, and under the circumstances the prosecutor was entitled to ask leading questions. State v. Davis, supra. Besides, we have examined the questions and answers involved in the interrogation and find nothing whatsoever in them which would prejudice the defendants.

Also without substance is the defense assertion that the prosecutor's "attempts to question the witness (Samuels) from the statement 'piece by piece, verbatim' and thus, getting over to the jury the contents of the statement, although the witness consistently refused to answer" was improper. The record before us discloses that, after the objection by defense counsel directed toward the state's questioning of the witness concerning the contents of his prior statement, there was considerable colloquy between the court, the prosecutor, and defense counsel; but the witness (following such objection) was not questioned concerning the contents of the writing.

 There is no merit, either, in the defendant's complaint concerning the judge's refusal to instruct the jury to disregard the testimony of the witness because he was not sworn. Assuming that such instruction would have been proper, the refusal does not, in our opinion, constitute grounds for reversal for the reason that, as has been heretofore shown, the testimony could not possibly have been prejudicial to the defendants. LRS 15:557.

### Bills of Exceptions Nos. 24, 25, 26, 27, 28, and 30.

These bills relate to the introduction into evidence of numerous confessions (both oral and written) made by the defendants to police officers while in the custody of the latter. At no time prior to making them were the accused informed of their right to retain counsel, of their privilege to remain silent, or that their statements might be used against them. But neither they nor their parents requested counsel.

In urging that it was error to permit the introduction of the confessions into evidence the defendants rely primarily on the holdings of the United States Supreme Court in Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, as extended in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, when read in connection with that court's memorandum decisions in McLeod v. State of Ohio, 378 U.S. 582, 84 S.Ct. 1922, 12 L.Ed.2d 1037 and 381 U.S. 356, 85 S.Ct. 1556, 14 L.Ed.2d 682. (Subsequent to the submission of the instant case in this court the United States Supreme Court rendered its sweeping decision in Miranda v. State of Arizona (and its companion cases), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.)

The Massiah case involved the obtaining of incriminating statements from the accused therein, by trickery (through the use of a co-defendant who had agreed to cooperate with the police) after he had been indicted, outside the presence of his retained counsel. The facts of that case are sufficiently different to permit a distinguishing of it from the instant matter, as hereinafter shown. Hence, we deem it inapplicable.

However, the holding in Escobedo, as explained and expanded in Miranda, effect new rules governing the obtaining and use of "in-custody" confessions. Those decisions would support the defendants' contention here (that their confessions were improperly admitted) but for the fact that since their rendition the United States Supreme Court decided Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882, wherein it declared that such cases should not be applied retroactively. In the latter the court said that the Escobedo "holding is available only to persons whose trials began after June 22, 1964, the date on which Escobedo was decided", and that the "guide lines" set forth in Miranda are "available only to persons whose trials had not begun as of June 13, 1966" (the date on which that decision was rendered).

In the instant case the court minutes show that the trial thereof was commenced on February 17, 1964, or prior to the rendition of either Escobedo or Miranda. Consequently, such cases are not applicable here. And, thus, it becomes necessary for us to determine the admissibility of the confessions of these defendants on the basis only of whether they were freely and voluntarily given.

The confessions here were obtained under the following circumstances: the alleged crime occurred on Thursday, June 21, 1963. The next night, Friday, in the course of their investigation, police officers took the defendants into custody for questioning; but they were later released to their families because of asserted alibis. About ten-thirty Saturday night (June 23), upon receiving further information which cast doubt on the alibis given, the police went to the homes of Butler and Evans and again took them into custody, at which time their families were informed that they would be subjected to questioning.

Captain Stevens testified that while the accused were being transported in separate vehicles to the police station he was riding with Evans, and that he told the latter: "I guess you know why we came to pick you up and talk to you again tonight. Your alibi of the previous night isn't holding up." Whereupon Evans replied: "Yes, sir, I'm going to tell you the truth. I shot the bus driver and Bernard was with me."

Detective Alphonse, who was in the car with Sergeant James Howley and Butler, testified that on the way to the station word came over the police radio that Evans had confessed, and that Butler then told such officers that he had furnished the gun.

The defendants were carried to the district police station and booked, and then were immediately transported to police headquarters, arriving there about eleven-thirty p. m. At that time Butler commenced making a statement, reciting his participation in the crime. Thereupon he was

asked, and he answered, questions relative to certain details in its commission. The statement, as well as the questions and answers, was put in typewritten form and signed by Butler.

Meanwhile, Evans had written out in long hand, and had signed, a statement admitting his part in the affair. He also was questioned. Thereafter his statement, together with the questions and answers, was copied on a typewriter and signed by him.

The entire process of giving the signed confessions was completed at about one-fifteen Sunday morning, less than two hours after the defendants arrived at headquarters.

Later, the two accused were brought to the show-up room, and questioned off and on during the remainder of the morning. At approximately six o'clock a. m. Sunday, they again gave and signed statements (in question and answer form) implicating two other persons in the commission of the offense and admitting two other robbery attempts. They were together during the giving of all confessions at headquarters.

On Monday morning, about ten-forty, Evans made an oral statement concerning a minor detail of the crime.

In brief to this court there is no contention that the confessions and admissions were made as the result of threats or violence, although it is suggested that the accused were held incommunicado and "sweated" for the second and subsequent statements. The chief objection to the confessions is that assertedly they were given because the police officers promised them leniency if they did so.

With regard to the suggestion that the defendants were pressured (while being held incommunicado) into making the second and subsequent statements, we find that the record simply does not bear out this assertion. There is nothing in the testimony of either of them to support a holding that they were mistreated in any way, or that anything other than the alleged promises of leniency influenced their making the confessions. In fact, one testified that the only reason he made the statements was because of such promises. We also note that, when he so requested, Evans was permitted, about one-thirty or two o'clock Sunday morning, to call his home. Butler admittedly made no such request.

In connection with the charge that promises of leniency were given, the police officers specifically denied having made them. In fact, one of them stated that he had told defendants that the matter would be up to the judge.

It is well settled that "The conclusion of the trial judge on the conflict of the testimony involves only a question of fact and should not be disturbed unless it is not supported by the evidence." State v. Hughes, 244 La. 774, 154 So.2d 395 and

the numerous cases cited therein. Our review of the record here convinces us that the trial judge properly weighed the evidence, and we find that it amply supports his conclusion that the confessions were freely and voluntarily made without any threats, promises or inducements. We note especially a conflict in the testimony of the two defendants themselves (who took the stand when the jury was retired) as to when the alleged promises were made.

■ Lastly, it is urged that the confessions should not have been admitted because reference is made in them to the commission by these defendants of other unrelated crimes. This complaint is specifically answered by our decision in State v. Maney, 242 La. 223, 135 So.2d 473. See also our comments in connection with bills Nos. 6, 14, 21 and 23.

### Bill of Exceptions No. 33.

Defense counsel took this bill when the trial court, on objection of the district attorney, refused to permit a defense witness (an uncle of defendant Butler) to testify. At the commencement of the trial, Butler's attorney had moved for a separation of the witnesses which was granted. When this witness commenced to testify he replied, in answer to a question by defense counsel, that he had not been in the courtroom except on Monday, which day was spent in selecting the jury. The district attorney

then stated that the witness' name appeared, as among the persons in the courtroom on Tuesday, on a list prepared by an investigator for the state; and that he wanted to call the investigator to traverse the witness' testimony. The witness then admitted that he was in the courtroom on Tuesday, but he declared that it was toward the end of the proceedings for the day and that he had not heard anything that had been said.

LRS 15:371 provides that when the judge orders the sequestration of the witnesses "any disregard" of such order by a witness "shall disqualify him from testifying * * *"; provided "that the judge may in all cases, in his discretion, permit any witness to testify."

■ In his per curiam to this bill the judge noted that in making his ruling he had considered the fact that the witness had denied being present in the courtroom after the selection of the jury until faced with the fact that his presence had been observed by the state's investigator. It was also significant, said the judge, that the witness' testimony was being offered to show the asserted involuntary nature of the confessions in that he could not get in touch with his nephew for some time after the latter was taken into custody; but that such witness was not called when the defendants were attempting to traverse the

state's proof outside the presence of the jury.

Under these circumstances we cannot say that the judge abused his discretion in refusing to permit this witness to testify.

*Bill of Exceptions No. 35.*

■■■ Mrs. Velma Lewis, grandmother of defendant Evans, had testified that on Saturday night, following the commission of the crime, Evans had been picked up from his home by the police and that he had called her about one-thirty or two o'clock on Sunday morning to ask her to bring him some shoes. She related that later on Sunday morning she went to the station to deliver those articles but was not permitted to see him. She was about to repeat what one of the police officers told her when the district attorney objected on the ground that it was hearsay. The court sustained the objection, and bill No. 35 was reserved. Clearly, a repetition of what the police officer said to her would have constituted hearsay and, as such, was inadmissible. LRS 15:434. The bill is without merit.

*Bill of Exceptions No. 38.*

■■■ This bill was reserved to the general charge of the judge to the jury with regard to confessions. As we understand defendants' argument anent this bill it is twofold: (1) that the court erred in charg-

ing that confessions might be admissible although each defendant was not represented by counsel when given, was not told that he was entitled to representation, and was not warned that the statements could be used against him; (2) that the judge should, at least, have especially instructed the jurors that they could take into consideration the fact that each accused was unrepresented when the confessions were given, was not informed of his right to counsel, or that the statements might be used against him, in making their determination of whether or not the confessions were voluntary and what weight should be given to them.

Our foregoing discussion in connection with the bills dealing with the admissibility of the confessions disposes of the first objection. In view of our conclusion there, the charge complained of was proper.

■■■ Nor do we think that the charge was erroneous for want of the special instruction suggested in the defendants' second objection. The court clearly admonished the jury that the confessions must be free and voluntary and that the burden of showing this was on the state; that when such statements had been admitted into evidence it was for the jury to determine whether they were freely and voluntarily made and what weight and effect should be given them; and that "in determining the weight and effect of such

statement and the bearing it might have or may not have on the issues involved in this case, the jury should take into consideration *all of the circumstances* under which the statement was made." (This, undoubtedly, included unrepresentation, etc.) The judge further charged: " * * * If you find from the evidence that the statements or confessions in question were made in response to questions while the person was under arrest, or in close confinement, or handcuffed, those facts and circumstances should be considered by the jury in weighing and determining what effect should be given to the said statements and/or confessions, but the law is that such circumstances do not of themselves render said statements and/or confessions involuntary and of no evidentiary value.

"It is the function of the trial judge to pass upon the admissibility of evidence and not the function of the jury to do so. The jury may disregard a confession or statement if they are not satisfied beyond a reasonable doubt that it was free and voluntary. * * *" (Italics ours.)

In our opinion this charge was entirely sufficient. If the defendants had desired a special charge that the jury consider, in connection with the confessions, the particular circumstances under which they were made, *especially with regard to lack of representation,* etc., it was incumbent on them to submit such a charge in writing to the court and request that it be given.

LRS 15:390. No such charge was requested herein, although defendants did submit a list of thirty-one special charges which were refused by the court either because they were not wholly correct, they were not pertinent, or they were covered in the general charge.

For the reasons assigned the convictions and sentences are affirmed.