**Daryl EVANS and Bernard Butler, Petitioners-Appellants,**

v.

**Ross MAGGIO, Warden, Louisiana State Penitentiary, Respondent-Appellee.**

No. 76–3072.

United States Court of Appeals, Fifth Circuit.

Aug. 12, 1977.

William E. Rittenberg, New Orleans, La. (Court-appointed), for petitioners-appellants.

Harry Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., New Orleans, La., for respondent-appellee.

Before GEWIN, AINSWORTH and SIMPSON, Circuit Judges.

AINSWORTH, Circuit Judge:

Daryl Evans and Bernard Butler, in custody of the State of Louisiana, brought this petition for habeas corpus under 28 U.S.C.

§ 2254 alleging that the grand and petit juries which indicted and convicted them in Louisiana state court were unconstitutionally composed. The district judge held that Evans and Butler had waived the issue on appeal in Louisiana state court and denied relief. Evans and Butler now appeal asserting that they did not intentionally or understandingly waive the issue in state court. We affirm.

In 1963 Evans and Butler, who are black, were arrested by Louisiana authorities for the murder of a New Orleans bus driver during an attempted robbery. Their attorneys filed a pretrial motion to quash the indictment, alleging systematic exclusion of blacks from Orleans Parish grand and petit juries. The motion was denied. Both Evans and Butler were convicted of murder and sentenced to life imprisonment.[1] Both appealed. Each perfected 39 bills on appeal,[2] including a bill alleging that the trial court erred in denying the motion to quash on account of the jury composition. On November 20, 1964 defendants filed a lengthy stipulation in Orleans Parish (Louisiana) Criminal District Court to the effect that they "incorporated verbatim into the record in the instant case" the extensive testimony concerning the composition of Orleans Parish grand and petit juries which had been received in *State v. Barksdale,* a case then pending on appeal in the Louisiana Supreme Court.

On December 14, 1964 the Louisiana Supreme Court decided *State v. Barksdale,* 247 La. 198, 170 So.2d 374 (1964), concluding that "Appellant has failed to prove systematic discrimination against members of the Negro race by purposeful limitation in the selection of juries because of race, . . ." 170 So.2d at 384. Later when Evans' and Butler's appeals were heard in the Louisi-

ana Supreme Court their bill of exceptions alleging discriminatory jury practices was neither briefed nor argued to the Court. This issue was therefore not discussed by the Court in its opinion. *State v. Evans and Butler,* 249 La. 861, 192 So.2d 103 (1966).

Five years later, in 1971, Evans filed a habeas corpus petition in Louisiana state court. This petition did not refer to the jury composition issue. Denial of relief was affirmed by the Louisiana Supreme Court. *La. ex rel. Evans v. Henderson,* 259 La. 955, 253 So.2d 793 (1971). In 1972 both Evans and Butler filed habeas corpus petitions in Louisiana state court; again the jury composition issue was not raised. These petitions were not pursued after Evans' and Butler's sentences were reduced from the death penalty to life imprisonment, on May 1, 1973. In 1975 Evans and Butler again petitioned the Louisiana state court for habeas relief, this time raising the jury composition issue. The writ was finally denied in the Louisiana Supreme Court because the issue "was abandoned on appeal." *Butler v. Henderson,* La., 1975, 310 So.2d 857, *citing State v. Evans and Butler,* 249 La. 861, 192 So.2d 103 (1966). Evans and Butler then brought this action in United States District Court seeking habeas corpus relief, alleging that the juries which indicted and convicted them were unconstitutionally composed.

The district judge denied Evans' and Butler's petition largely on the basis of *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), *aff'g* 5 Cir., 1974, 496 F.2d 896. *Francis* affirmed the denial of habeas relief to a petitioner who failed to challenge the composition of a grand jury prior to trial as required by Louisiana law, and who later sought to raise the issue in

---

1. Evans and Butler were originally sentenced to death by electrocution. For reasons which do not appear in the record before us the sentences were commuted to life imprisonment.

2. La.Code of Crim.Pro. art. 920 provides:

The following matters and no others shall be considered on appeal:

(1) Formal bills of exceptions that have been submitted to and signed by the trial court in accordance with Article 845, whether or not the bills of exceptions were made a ground for a motion for a new trial; and

(2) Any error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence.

federal court by a section 2254 habeas petition. Citing interests of finality and federalism the Supreme Court held that the state procedural rule could be respected by a federal habeas corpus court where the petitioner showed neither "cause" [3] for the failure to timely challenge the jury composition, nor prejudice resulting from its composition. *Francis v. Henderson, supra,* 425 U.S. at 542, 96 S.Ct. at 1711; *see Davis v. United States,* 411 U.S. 233, 244–45, 93 S.Ct. 1577, 1583–84, 36 L.Ed.2d 216 (1973). The effect of the district judge's holding was to apply the rule in *Francis* to post-trial waivers of timely challenges of the composition of juries. Both Evans and Butler appealed.

On this appeal Evans and Butler assert that the district judge erred in holding that the jury composition issue was abandoned by them on appeal in reliance on *Barksdale.* They argue that the judge further erred in holding that abandonment of the issue on appeal was tantamount to failing to raise it at all since they state they were unaware that the issue had not been briefed and argued on appeal. Finally Evans and Butler contend that the district judge exceeded his authority in applying the rule in *Francis* to the circumstances of this case.

■ In considering whether a prisoner has waived his opportunity to assert a constitutional right the usual rule is that the federal habeas judge may in his discretion deny relief to an applicant who has deliberately bypassed the orderly procedure of the state courts and in so doing has forfeited his state remedies. *Barnes v. Estelle,* 5 Cir., 1975, 518 F.2d 182, 184; *see Fay v. Noia,* 372 U.S. 391, 438–39, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963). A decision to bypass made by counsel not participated in by the prisoner does not automatically bar relief; "the standard here put forth depends on the considered choice of the petitioner." *Fay v. Noia, supra,* 372 U.S. at 439, 83 S.Ct. at 849.

Evans and Butler assert that they "were never informed" that the jury composition issue was not pressed on appeal, and that therefore they could not "understandingly and knowingly" have chosen to forego appeal on this issue.

We have held, however, that an exception to the general rule that constitutional claims may be raised on federal collateral attack unless "intentionally and knowingly" waived, is to be found in *Davis, supra,* "and its legitimate progeny." *Dumont v. Estelle,* 5 Cir., 1975, 513 F.2d 793, 797. *Davis* involved a federal prisoner who had failed to bring a constitutional challenge to jury composition before trial, as required by Fed. R.Crim.P. 12(b)(2).[4] The prisoner later brought a proceeding under 28 U.S.C. § 2255 asking that the conviction be set aside on account of the composition of the grand jury which had indicted him. The Supreme Court held that a habeas corpus judge in his discretion could deny a petitioner relief on a constitutionally founded jury composition issue where the petitioner had foregone his opportunity to raise the issue and could present no "cause" for the lack of timeliness and no resultant prejudice. 411 U.S. at 244–45, 93 S.Ct. at 1583–84.

■ In *Francis* the Supreme Court extended the rule in *Davis* to give similar efficacy to the Louisiana waiver statute. In question was the predecessor statute to La.Code Crim.Pro. art. 535(B)(3), providing that jury composition issues not raised prior to trial are waived. A Louisiana prisoner who had not appealed his conviction sought federal collateral relief under section 2254 on grounds that the grand jury which had indicted him was illegally constituted. Denied relief, he eventually brought his case to the Supreme Court. Largely on the basis of *Davis* the Court affirmed the denial

---

**3.** "Cause" as used in this context in *Davis* refers to "plausible explanation of his failure to timely make his objection." 411 U.S. at 243, 93 S.Ct. at 1583.

**4.** Fed.R.Crim.P. 12(b)(2) provided in pertinent part in 1973 that "objections based on defects in the institution of the prosecution or in the

indictment . . may be raised only by motion before trial" and that failure to timely present such objections "constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver." The rule's wording was changed in 1974.

of relief. In so doing the Court quoted with approval the following:

Not only may the prompt determination of such preliminary matters avoid the necessity of a second trial, but a long delay in its determination, such as here, makes it extremely difficult in this class of case for the State to overcome the prima facie claim which may be established by a defendant. Material witnesses and grand jurors may die or leave the jurisdiction, and memories as to intent or specific practices relating to the selection of a particular grand jury may lose their sharpness. Furthermore, a successful attack on a grand jury that sat several years earlier may affect other convictions based on indictments returned by the same grand jury.

*Francis v. Henderson, supra,* 425 U.S. at 541, 96 S.Ct. at 1711, *quoting Michel v. Louisiana,* 350 U.S. 91, 98 n. 5, 76 S.Ct. 158, 163, 100 L.Ed. 83 (1955). The Supreme Court further said:

If, as *Davis* held, the federal courts must give effect to these important and legitimate concerns in § 2255 proceedings, then surely considerations of comity and federalism require that they give no less effect to the same clear interests when asked to overturn state criminal convictions. Those considerations require that recognition be given "to the legitimate interests of both State and National Governments, and . . . [that] the National Government, anxious though it may be to vindicate and protect federal rights and federal interests, always [endeavor] to do so in ways that will not unduly interfere with the legitimate activities of the States." *Younger v. Harris,* 401 U.S. 37, 44 [91 S.Ct. 746, 750, 27 L.Ed.2d 699, 676]. "Plainly the interest in finality is the same with regard to both federal and state prisoners. . . .

There is no reason to . . . give greater preclusive effect to procedural defaults by federal defendants than to similar defaults by state defendants. To hold otherwise would reflect an anomalous and erroneous view of federal-state relations." *Kaufman v. United States,* 394 U.S. 217, 228, 89 S.Ct. 1068 [1075], 22 L.Ed.2d 227 [238].

*Francis v. Henderson, supra,* 425 U.S. at 541-42, 96 S.Ct. at 1711. Based on these policies and considerations *Davis* and *Francis* establish an exception to the general rule that all constitutional claims may be raised in a federal collateral petition, unless "intentionally and understandingly waived." *See Dumont v. Estelle, supra,* 513 F.2d at 797. After *Davis* and *Francis* waiver is automatic under a procedural rule such as Fed.R.Crim.P. 12(b)(2) or La.Code Crim. Pro. art. 535(B)(3)[5] unless the petitioner can show "cause" and prejudice, and this rule governs an untimely claim of grand jury discrimination, "not only during the criminal proceeding, but also later on collateral review." *Davis v. United States, supra,* 411 U.S. at 242, 93 S.Ct. at 1582.

■ The present case involves similar policies and considerations as those expressed in *Davis* and *Francis.* It is well established in Louisiana jurisprudence that issues for which bills of appeal are perfected, but which are not briefed and argued on appeal, are "abandoned," or waived. *E. g., State v. Johnson,* La., 1976, 327 So.2d 384, 386; *State v. LaGarde,* La., 1975, 311 So.2d 890, 891; *State v. Thornhill,* 188 La. 762, 178 So. 343, 348 (1937); *See State v. Edwards,* 261 La. 1014, 1972, 261 So.2d 649, 650 ("We do not consider the merits of [the abandoned] bill"). The rule serves important interests of finality and the integrity of judgments. The Louisiana Supreme Court has recently held that by operation of this rule appellants effectively waive consti-

**5.** La.Code of Crim.Pro. art. 535(B)(3) provides as follows:

B. A motion to quash shall be filed at least three judicial days before commencement of trial, and may be filed with permission of the court at any time before commencement of trial, when based on any of the following grounds:

(3) A grand jury indictment is invalid because the manner of selection of the general venire, the grand jury venire, or the grand jury was illegal.

tutional objections to grand and petit jury composition. *State v. Lee,* La., 1976, 340 So.2d 180, 182–83; *see State v. Phillips,* La., 1976, 337 So.2d 1157.

In *Francis* the Supreme Court held that the rule of *Davis v. United States* applies with equal force when a federal court is asked in a habeas corpus proceeding to overturn a state court conviction because of an allegedly unconstitutional grand jury indictment. 425 U.S. at 542, 96 S.Ct. at 1711. Thus we find that the holding of *Francis* governing collateral attacks on waived issues of grand and petit [6] jury composition applies to the facts before us. It is also noteworthy that Evans and Butler waited ten years after waiving the jury composition issue on appeal before seeking federal collateral relief.

Evans and Butler may not now be heard to raise the waived issue unless they can show "cause" for the waiver and actual prejudice resulting from it. *Lumpkin v. Ricketts,* 5 Cir., 1977, 551 F.2d 680, 682. But Evans and Butler can show no "cause" for failure to prosecute their appeal because, as the record shows, they had perfected their bill on appeal and had access to extensive evidence concerning Orleans Parish jury composition through the record established in the *Barksdale* case, noted earlier. Their lack of timely interest in the jury composition issue is shown not only by their failure to pursue their appeal on this issue but by their failure even to raise the question in their earlier habeas petitions in state court. The issue is now before us thirteen years after their convictions and fourteen years after indictment.

Finally, Evans and Butler allege no prejudice arising from the composition of the grand jury. There were no racial overtones to this case, *see Davis v. United States, supra,* 411 U.S. at 243–44, 93 S.Ct. at 1583. The indictments and convictions appear from the record to have been largely based on confessions. In short Evans and Butler have "shown no cause why the court should grant [them] relief from [their] waiver of objection to the composition of the grand jury . . . ." *Davis v. United States, supra,* 411 U.S. at 244, 93 S.Ct. at 1583. Accordingly we hold that the trial judge did not abuse his discretion in denying collateral relief to Evans and Butler based upon the issue of jury composition, which they abandoned in the state courts.[7]

AFFIRMED.

---

**6.** We apply a similar rule both to grand and petit jury attacks. *Cunningham v. Estelle,* 5 Cir., 1976, 536 F.2d 82, 83–84.

**7.** Compare the recent case of *Wainwright v. Sykes,* —— U.S. ——, 97 S.Ct. 2497, 53 L.Ed.2d 594 [1977], in which the Supreme Court, in considering a habeas corpus petition of a Florida state prisoner, held that Florida's contemporaneous objection rule precluded federal habeas corpus relief. The Supreme Court (Rehnquist, J.) said in part as follows:

The contemporaneous objection rule *itself is* by no means peculiar to Florida, and deserves greater respect than *Fay* gives it, both for the fact that it is employed by a coordinate jurisdiction within the federal system and for the many interests which it serves in its own right. A contemporaneous objection enables the record to be made with respect to the constitutional claim when the recollections of witnesses are freshest, not years later in a federal habeas proceeding. . . .

A contemporaneous objection rule may lead to the exclusion of the evidence objected to, thereby making a major contribution to finality in criminal litigation.

.   .   .   .   .

We think that the rule of *Fay v. Noia,* broadly stated, may encourage "sand bagging" on the part of defense lawyers, who may take their chances on a verdict of not guilty in a state trial court and intend to raise their constitutional claims in a federal habeas court if their initial gamble does not pay off.