30 So.2d 834

**STATE v. WILLIAMS.**

No. 38468.

April 21, 1947.

Rehearing Denied May 26, 1947.

George Wray Gill and Rudolph Becker, both of New Orleans, for appellant.

Fred S. LeBlanc, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., and Herve Racivitch, Dist. Atty., and R. E. LeCorgne, Jr., Asst. Dist. Atty., both of New Orleans, for appellee.

FOURNET, Justice.

Joseph A. Williams, having been convicted and sentenced to serve ten months in the parish prison on an indictment charging him with having accepted from Otha Hayes $100 with the intention of corruptly influencing the conduct of an employee of the City of New Orleans to improperly approve the issuance of a Certificate of Public Necessity and Convenience, prosecutes this appeal.

Although the record shows that the defendant reserved numerous bills of exceptions during the course of his trial, he perfected only nine of them and in presenting these here in argument, both orally and in

brief, his counsel treated these nine indiscriminately, making no effort to consider them either in their natural sequence or separately, as is customary, and ultimately resolving the substances of the bills to only two complaints.

The first complaint is that the state erred in not allowing the defendant's prayer for oyer of certain documents in the possession of the district attorney, including statements made by the witnesses and confessions and admissions allegedly made by the defendant.

There is no merit to this complaint. The record shows that in answer to the prayer for oyer the state, through its attorney, declared it had no admissions or confessions made by the defendant in its possession and no such evidence was used or attempted to be used during the trial of the case. While certain statements of the defendant with reference to his acts in connection with the alleged crime with which he was charged were offered in evidence during the course of the trial, these were neither admissions nor confessions. They were, instead, a part of the defendant's very acts upon which the charge against him was based and it is the jurisprudence of this state that an accused is not entitled to have the state furnish him, prior to trial, with the evidence upon which it intends to rely for his conviction. This includes evidence that has been reduced to writing by the prosecuting attorney for his convenience.

The defendant's next complaint is that he was improperly convicted, it being his contention (1) that the state failed to prove a necessary element of the crime as there is no evidence to establish the fact that the subject certificate of public necessity and convenience was improperly issued as charged in the indictment, and (2) in any event, that there is no evidence whatever in the record to show the $100 was accepted by the defendant with the intention that he should corruptly influence the conduct of *an employee of the City of New Orleans,* as alleged in the indictment.

The article of the Criminal Code under which the defendant was charged declares that "Corrupt influencing is the giving or offering to give anything of apparent present or prospective value to, or the accepting or offering to accept anything of apparent present or prospective value by, any person, with the intention that the recipient shall corruptly influence the conduct of any of the persons named in Article 118 (public bribery) in relation to such person's position, employment or duty." Article 120.

Both Articles 118, denouncing public bribery, and 120, denouncing corrupt influencing, are to be found in Title VII of the Criminal Code dealing with "Offenses Affecting Organized Government" and are in Chapter 2 of this title that is headed "Bribery and Intimidation." The offense sought to be denounced in Article 118 is the bribery of (1) public officers or em-

ployees; (2) election officials; (3) grand or petit jurors; and (4) witnesses by the giving or offering to them of anything of value with the intention of influencing their conduct in relation to their position, both the giving and the receiving being condemned, while Article 120 seeks to bring within the reach of the law that class of persons who for a consideration endeavor to influence public officers and employees, election officials, jurors, and witnesses, or who hold themselves out as having influence with these persons, the one offering the money being equally as guilty under this article as the person who holds himself out as having influence with the public official.

■ It is our opinion, therefore, that while it was necessary to aver in the indictment and to establish by the evidence that the money received by the defendant in the instant case was given to him with the intention that he corruptly influence one of the public officials enumerated in Article 118 (a city employee) for the purpose of securing approval of the issuance of the Certificate of Public Necessity and Convenience, it was unnecessary to allege or to show that the license was improperly approved or issued or to show that the employee was actually corrupted.

The other contention of the defendant, that there is no evidence to show the $100 was accepted by him with the intention that he should corruptly influence the conduct of a city employee, is equally without merit.

The trial judge in his per curiam to the bill reserved to his overruling of the motion for a new trial, in which motion this question was raised, says:

"With all deference to counsel for Appellant, this Court respectfully asserts that the evidence produced by the State was not merely decisive and proof beyond any reasonable doubt, but was so compelling and overpowering that Appellant was reduced to a state of helplessness. Appellant was represented by two of the most astute, aggressive and experienced lawyers practicing in our Criminal Courts, and not a single State witness or utterance was challenged. * * *

"The witnesses for the State * * * had seen Appellant in the offices of the Commissioner of Public Utilities, apparently on free and easy terms with the officials of that office. These negroes turned to Appellant for help to secure the necessary approval. Appellant told them that he could secure the approval from the Department, aforesaid, upon two conditions, to-wit:

"(1) That they pay him, Appellant, a sum of money. (In this case $100)

"(2) That they give one day of their labor upon the country home of the Commissioner of Public Utilities in Abita Springs, Louisiana, a place some sixty-five (65) miles from New Orleans.

"The second condition was duly and faithfully executed by all parties thereto. Appellant assembled, in New Orleans, the negro applicants for the C.P.N.C. certificates, loaded them into one or two automobiles, transported, or had them transported the sixty-five miles to Abita Springs where the aforesaid applicants put a day's labor into work on the grounds of the summer home of the Commissioner. One of the negro applicants officiated as cook and all were fed on the place and at the end of the day all returned to New Orleans in the transportation that had carried them to Abita.

\* \* \* \* \*

"And again, the fact that Appellant should make such a proposal to these negro applicants and then proceed in a cool matter of fact way to carry it out could not otherwise than convince the negro applicants that Appellant was in some way the trusted and confidential minion of the Commissioner, and perforce the right man to do 'business' with, if there was any 'business' to be done, as Appellant led them to believe."

 While it is true that the only witness who testified as to the actual commission of the crime charged in this case was the prosecuting witness, Otha Hayes, who stated, when recalled to the stand, that the defendant did not tell him for whose benefit the money was being paid other than that it was not for him or for the Commissioner but for "that other s—— o— a b——" without designating any particular employee of the city, we think that considering the evidence as a whole, the witness was referring to an employee in the office of the Commissioner of Public Utilities whose duties were connected with the issuance of these certificates. The fact that the employee was never designated by name in the indictment or in the evidence is immaterial as it does not appear such designation was necessary for the proper defense of the defendant or that he was in any wise prejudiced thereby.

In connection with the alleged crime charged, in order to show guilty knowledge and intent on the part of the defendant, the state introduced the testimony of several witnesses who had had similar transactions with the defendant. All of them testified to the same effect as did the prosecuting witness with the exception that they were more specific. One of these witnesses, when recalled to the stand for further examination by the state before the case was closed, did name the city employees the defendant was to influence.

Counsel have raised one more point in brief, apparently abandoning all others as they were not argued here, and that is the contention raised in the motion to quash that the bill of indictment charged the defendant with no crime known to the law.

A mere examination of the indictment, with reference to the article of the Criminal Code upon which it is based, will show that the defendant was charged in substan-

tial compliance with the statute, the necessary facts and details in connection therewith being given. This is all that the law requires.

For the reasons assigned, the conviction and sentence are affirmed.

O'NIELL, C. J., concurs in the decree.