196 So.2d 250

**STATE of Louisiana**

**v.**

**George W. AHRENS, Jr.**

No. 48331.

Feb. 20, 1967.

Rehearing Denied March 27, 1967.

John Schwab, Baton Rouge, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Sargent Pitcher, Jr., Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.

McCALEB, Justice.

Appellant was convicted for simple burglary of a residence located at 2903 Jackson Avenue in the city of Baton Rouge and sentenced to serve a term of nine years at hard labor in the State Penitentiary. During the course of his trial he reserved three bills of exceptions upon which he is relying on this appeal for a reversal of his conviction. We shall consider these bills in their reverse order.

Bill of Exceptions No. 3 was taken to the overruling of a motion to suppress certain evidence seized by the arresting officers at the time of appellant's apprehension. The substance of the motion to suppress (which was timely filed in advance of trial) is that the evidence, consisting of a bag containing a large number of coins (10¢ pieces), a wrist watch, a wrist watch band and watch box, was secured without a search warrant and was not obtained as an incident to a valid arrest founded on probable cause. It is alleged, therefore, that the evidence was secured in violation of the Fourth and Fourteenth Amendments to the United States Constitution and Section 7 of Article 1 of the Constitution of this State. And it is contended that the Federal decisions in Beck v. State of Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Kelley v. United States, 111 U.S.App.D.C. 396, 298 F.2d 310 (1961) and other cases, require reversal of the conviction on the facts contained in the record.

The State, on the other hand, asserts that the evidence obtained by the officers was an incident to a lawful arrest. Thus the question presented is whether or not the arrest was lawful, for it appears that the search was made as an incident to the arrest.

R.S. 15:60(4) authorizes any peace officer to arrest a person without a warrant "When he has reasonable cause to believe that a felony has been committed and rea-

sonable cause to believe that such person has committed it."

The testimony taken on the motion to suppress reveals that one Collinson, an ex-deputy sheriff of East Baton Rouge Parish who owned a Texaco station where appellant's brother was employed, telephoned the sheriff's office to report that he had seen appellant, a former convict, and his brother counting a large number of small coins. The officers, being cognizant of the occurrence of many recent burglaries in the Baton Rouge area involving the extraction of coins from pinball and coke machines, went to the service station to talk with Collinson in response to his call. Collinson furnished the officers with a description of appellant, as well as a description of his car bearing Ohio license plates and the number thereof. Appellant was at the service station when the detectives arrived and, upon seeing their car (which appellant testified he knew to be an unmarked police car), he drove away. The detectives followed in the police car and, upon reaching Fairfields Avenue, overtook appellant's car and ordered him to pull over which he did. They asked to see appellant's driver's license, which was issued in Ohio, and when he complied they asked, according · to their testimony (which appellant disputes), his permission to open the trunk of his car and they say he gave them the key and consented to have it searched. There, the officers found a bag containing numerous

10¢ piece coins which, according to appellant, approximated $55.00. When the officers requested appellant to explain how or where he obtained the coins, he said at first that he had saved the money over a period of time but soon afterwards admitted they came from coin machines which had been burglarized. The officers also secured a watch and band from appellant's wrist and found another wrist watch band and watch case in the glove compartment of his car.

Appellant, in his testimony, denied that he consented to a search of his car and his counsel, at that time, sought to enlarge the scope of the motion to suppress by objecting to the introduction of testimony regarding inculpatory statements and a confession made by appellant which we shall hereinafter discuss in our treatment of Bill No. 1.

 After hearing the evidence the trial judge concluded that the recent burglaries of pinball and automatic vending machines in the Baton Rouge area which the officers had under investigation and the information they received from a reliable source (Collinson, an ex-deputy sheriff known to the officers) to the effect that he had seen defendant and his brother counting a large number of coins; coupled with their knowledge that appellant was an ex-convict using an Ohio licensed car in which he immediately drove off from the service station when they arrived there to interview Collinson, afforded the officers reasonable

grounds for believing that appellant was implicated in the crimes and furnished probable cause for his arrest.

We find no error in this ruling. In the recent case of State v. Johnson, 249 La. 950, 192 So.2d 135, it was stated:

"Reasonable belief—or 'probable cause', as it is termed under the federal standard—to make an arrest without a warrant exists when the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient in themselves to justify a man of average caution in the belief that a felony has been or is being committed. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); State v. Green, 244 La. 80, 150 So.2d 571 (1963); State v. Aias, 243 La. 945, 149 So.2d 400 (1963); State v. Calascione, 243 La. 993, 149 So.2d 417 (1963).

"Compliance with these standards is, in the first instance, a substantive determination to be made by the trial court from the facts and circumstances of the case. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); State v. McIlvaine, 247 La. 747, 174 So.2d 515 (1965).

"And in determining compliance with these standards it is not the proof required for conviction which concerns us. Proof required to satisfy the requirement of reasonable belief or probable cause is less and is what the terms imply: probabilities and practical considerations of everyday life on which reasonable men could reasonably be expected to act. Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); State v. Bourg, 248 La. 844, 182 So.2d 510 (1966)."

It appears to us that the facts of this case bring the arrest squarely within the federal standard of probable cause.

In addition, the district court further deduced that the State had shown by clear and convincing evidence that appellant consented to the search and, hence, he had waived his constitutional right to claim that it was unreasonable. In view of our conclusion that the arrest was legal, it is unnecessary for us to rest our decision on appellant's alleged waiver of constitutional rights.

Bill of Exceptions No. 2 was reserved to the overruling of a motion for a mistrial. The motion stems from the fact that the bailiff in charge of the jury entered the jury room, allegedly during the jury's deliberations, closed the door and remained therein for approximately one to one and one-half minutes. It is urged that the bailiff's activities, whilst in the jury room, related to the critical function of the jury in having its foreman write the verdict on the bill of information and that this operated as such a restraint upon the jury as to con-

stitute grounds for a new trial, even though no prejudice has been shown.

■ The bailiff testified he entered the jury room in response to the jurors' call for advice as to how they should fill out their verdict on the bill of information; that he told them he did not know but would ask the judge; that he then went to the judge's chambers and the judge instructed him to inform the jury to write the verdict on the back of the bill of information. The bailiff then reported these instructions to the jury and left the room. Within two or three minutes the jury informed the bailiff it was ready to report its verdict.

■ Since, admittedly, appellant was not prejudiced by the action of the bailiff, we find no merit in the bill. The purpose of isolation of the jury, provided by R.S. 15:-394, is to protect it from outside influence. See State v. Davis, 237 La. 577, 111 So.2d 778 and cases there cited. It is not contended here that any outside influence was brought to bear on the jury at any time; the time and sequence of the bailiff's entry in and departure from the jury room and his re-entry in and departure therefrom shows definitely, as stated by the trial judge, that the jury had completed its deliberations, had agreed upon its verdict and the only matter left for the attention of the jury was the recording of the verdict on the bill.

Bill of Exceptions No. 1 was reserved to the ruling of the trial judge in permitting Lieutenant Tate of the Baton Rouge Police Department to testify as to certain inculpatory statements, admissions and confessions given by appellant relating to the crime charged herein.[1] The bill recites that these incriminating statements were elicited from the appellant subsequent to the arrest but prior to his arraignment and before he was given benefit of counsel. It is contended that the trial court's admission of the testimony of Lt. Tate constitutes a violation of appellant's rights under the 4th, 5th, 6th and 14th amendments to the U. S. Constitution. Appellant relies upon Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977; Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694; Carrizosa v. Wilson, 244 F.Supp. 120 (D.C. Cal.1965); U. S. ex rel. Kemp v. Pate, 240 F.Supp. 696 (D.C.Ill.1965) and U. S. ex rel. Rivers v. Myers, 240 F.Supp. 39 (D.C.Pa. 1965).

---

1. As indicated in our discussion of Bill No. 3, the motion to suppress was expanded to include the suppression of appellant's inculpatory statements and confessions. Since we know of no applicable law that authorizes a pre-trial suppression of a confession prior to the time the State elects to offer it in evidence, we consider the objection made by appellant in the motion to suppress only in relation to whether such confessions or other inculpatory statements were properly admitted in evidence at the trial. See, however, Article 703, subd. B of the new Code of Criminal Procedure (Act 310 of 1966) which became effective January 1, 1967.

In answer to these contentions the State, depending on Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed. 2d 882, decided on June 20, 1966, and our own decisions in State v. Gregoire, 249 La. 890, 192 So.2d 114 (rehearing denied December 12, 1966); State v. Evans, 249 La. 861, 192 So.2d 103 (rehearing denied December 12, 1966) and State v. Johnson, 249 La. 950, 192 So.2d 135 (rehearing denied December 12, 1966), asserts that, since appellant has admitted in his testimony [2] that the inculpatory statements and confessions were freely given, there is no merit in the bill and, especially so, because the rule of the Miranda case was not applicable at the time of the trial.

According to the testimony attached to this bill, appellant made statements or confessions to Lt. Tate in the presence of Detective Passman some hours after his arrest. These statemens were given in an interview room at the police station and appellant had not, at this time, been charged or booked with any offense. Lt. Tate testified appellant did not request, after his arrest about 5:30 p. m. or during the interrogation which followed, to use a telephone nor did he request that he be permitted to consult an attorney or that an attorney be furnished him. During his interrogation, appellant confessed to the commission of many burglaries. Because of this, the interrogation was not continuous, as the officers left the room on occasion to check their files concerning information given by appellant as to items taken by him in theretofore unsolved burglaries. Although appellant admits in his testimony that the officers did not force him to confess or use any duress on mind or body to bring about the confessions, he nevertheless complains that the admission of these inculpatory statements in evidence violated his constitutional rights, as defined by the Supreme Court of the United States in the Escobedo and Miranda cases.

■ But, as pointed out by the State, the investigatory rules enacted by the Miranda and Escobedo cases are not to be applied retroactively. Indeed, as announced by the Supreme Court in Johnson v. State of New Jersey, supra, and as we stated in the Gregoire, Evans and Butler and Cleveland Johnson and Morris Johnson cases, the Escobedo rule is available only to persons whose trial began after June 22, 1964 and the guidelines enunciated in the Miranda decision are applicable only to persons whose trials began as of June 13, 1966, the date of that pronouncement.

■ Since this trial began on May 27, 1966, prior to the decision in the Miranda

---

2. This testimony was given by appellant at the trial of his motion to suppress the evidence secured in the search of his automobile. He did not elect to testify when the State, out of the presence of the jury, was laying the foundation for the admission of his statements and confessions in evidence.

case, the rules prescribed by that pronouncement are not available to appellant. However, the rules set forth in the Escobedo decision are applicable as the State readily acknowledges. The holding in the Escobedo matter, as set forth therein, is that statements elicited by the police during an interrogation of one suspected of crime may not be used against him in a criminal prosecution whenever

"* * * the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, *the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, * * *."* (Emphasis ours).

▬ There is no doubt that appellant was under arrest, although he had not been officially charged, at the time he gave the incriminating statements. However according to the evidence—i. e., the unrebutted testimony of Lt. Tate taken at the trial and the preponderating evidence of the police officers given on trial of the motion to suppress, appellant made no request to interview counsel. In fact, he testified that he knew that he was entitled to counsel and, consequently, he was not pressing the matter.[3]

It is therefore seen that this case is not controlled by the rule of the Escobedo case, for appellant was advised of his constitutional right to remain silent and, further, albeit he was not specifically told that he was entitled to consult a lawyer, this indeed would have been superfluous as he states that he knew that he was entitled to a lawyer and, according to the witnesses for the State, he made no request to see a lawyer and was not denied the opportunity to consult with one. We therefore hold that Bill No. 1 is without merit.

For the reasons assigned, the conviction and sentence are affirmed.

---

3. · He expressed it thus: "Of course I knew that I was allowed to have counsel so I wasn't pressing the matter. *If they did fine, if they didn't it was their mistake.*" (Emphasis ours).