206 So.2d 510 (1968)
251 La. 827
STATE of Louisiana
v.
Philip CARDINALE, Jr.
No. 48769.
Supreme Court of Louisiana.
January 15, 1968.
Rehearing Denied February 19, 1968.
*511 Greenberg & Cohen, Gretna, for defendant-appellant.
Jack P. F. Gremillion, Atty. Gen., William P. Schuler, Asst. Atty. Gen., Leander H. Perez, Jr., Dist. Atty., Preston H. Hufft, Special Counsel to Dist. Atty., for plaintiff-appellee.
HAMITER, Justice.
Philip Cardinale, Jr., was charged in an indictment with having murdered, on or about August 10, 1965, one Mary Agnes Buford. Following a trial by a jury, which resulted in a verdict of guilty, he was sentenced to death. On this appeal he relies on fourteen bills of exceptions to obtain a reversal of his conviction and sentence.
Bill No. 1 was reserved to the court's refusal to order the state, as requested in defendant's prayer for oyer, to produce "All statements obtained by the prosecution from any and all witnesses or other third persons in connection with the prosecution of the defendant herein."
There is no merit in the bill. In State v. Haddad, 221 La. 337, 59 So.2d 411, we said: "It is now so firmly established in our jurisprudence that a defendant in a criminal case is not entitled to a pre-trial *512 inspection of written confessions of codefendants, written statements of witnesses, or police reports in the hands of the sheriff, the police department, or the district attorney that we fail to understand why defense counsel continue to present such arguments to us on appeal. State v. Lee, 173 La. 966, 139 So. 302; State v. Dallao, 187 La. 392, 175 So. 4; State v. Williams, 211 La. 782, 30 So.2d 834; State v. Mattio, 212 La. 284, 31 So.2d 801; State v. Simpson, supra [216 La. 212, 43 So.2d 585]. * * *" See also State v. Johnson, 249 La. 950, 192 So.2d 135.
Bill of exceptions Nos. 2 and 6 involve the same subject matter and were taken under the following circumstances: On August 12, 1965, or two days after the murder (by bludgeoning of the victim), a search warrant was obtained by law enforcement officers authorizing the search of a described Dodge automobile at a given address, this for the purpose of seizing "Sharp metal object or objects, axe, large knife, piece of metal used as a club hammer, hatchet or hatchets, human Hair, Human Blood, female clothing, shoes, ladys purse." Prior to the trial the defendant moved to suppress some of the evidence seized by means of the warrant, and he reserved bill No. 2 to the court's overruling such motion. Bill No. 6 was taken during the trial when the court denied defendant's objection to the introduction of human hair and blood found in the trunk of the searched vehicle. (Two other search warrants obtained at the same time authorized search for the identical articles in a building and a shed located at the mentioned address. However, evidence taken in connection with the motion to suppress revealed that the searches made under these warrants produced nothing for the state to use in the prosecution. Consequently, the court's overruling the motion to suppress as to them was not prejudicial and is immaterial here.)
The accused concedes that the warrant is in proper form and was issued on probable cause. (We have examined the application for the warrant, but in view of defendant's concession it is unnecessary to discuss in detail the fact of the issuance thereof.) The sole basis for urging the alleged invalidity of the warrant, and the impropriety of introducing the evidence obtained through its use, is that such was directed against the obtaining of items purely "evidentiary" in nature and, therefore, not subject to seizure and subsequent use in the prosecution of the cause.
In connection with these bills the defendant contends that the provisions of LRS 15:42 and 43 (1928 Code of Criminal Procedure) do not include "evidentiary" things as among those which might be the subject of a search warrant; and that, because these sections limit the objects for which a search can be made, the warrant herein authorizing a search for the items sought was improper and illegal. However, LRS 15:41 (1928 Code of Criminal Procedure), which must be read in connection with the two succeeding sections, grants to the courts unlimited authority to issue search warrants. And the authority therein granted is circumscribed, we think, only by the provisions of Article I, Section 7 of the Louisiana Constitution which provides that no search or seizure shall be made except upon warrant issued upon "probable cause" (such probable cause usually being a showing of a nexus between the object sought and the commission of a known or suspected crime).
The mentioned Sections 42 and 43 do not, in our opinion, constitute a limitation of that authority; rather, they provide additional instances where a warrant might issue. Thus, Section 42 permits the obtaining of possession of stolen property and Section 43 authorizes seizure of property which, by nature, is contraband and to which, therefore, the state has the right of possession without there necessarily having been a crime committed.
The defendant additionally contends that the search and seizure, as well as the *513 subsequent use in the prosecution of the defendant, of the purely evidentiary items violated his rights provided for in Amends. IV and V of the Federal Constitution. He relies on Gouled v. United States, 255 U.S. 298, 41 S.Ct. 261, 65 L.Ed. 647, as approved in United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877.
Conceding, arguendo, that some of the broad language used in the Gouled opinion might furnish some support to defendant's contention, the effect of that opinion has been specifically limited in the more recent case of Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782. In the latter the court approved the seizure of wearing apparel of the accused and the introduction thereof into evidence. In so doing it observed: "We come, then, to the question whether, even though the search was lawful, the Court of Appeals was correct in holding that the seizure and introduction of the items of clothing violated the Fourth Amendment because they are `mere evidence.' The distinction made by some of our cases between seizure of items of evidential value only and seizure of instrumentalities, fruits, or contraband has been criticized by courts and commentators. The Court of Appeals, however, felt `obligated to adhere to it.' 363 F.2d [647], at 655. We today reject the distinction as based on premises no longer accepted as rules governing the application of the Fourth Amendment."
The court then pointed out that the only proper application of Gouled would be in cases where the items seized were private papers, writings, or documents of the suspect to the extent that their involuntary seizure and use as evidence against him "would be, in effect, as ruled in the Boyd Case [Boyd v. United States, 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746], to compel the defendant to become a witness against himself." And the court concluded: "The items of clothing involved in this case are not `testimonial' or `communicative' in nature, and their introduction therefore did not compel respondent to become a witness against himself in violation of the Fifth Amendment. Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908. This case thus does not require that we consider whether there are items of evidential value whose very nature precludes them from being the object of a reasonable search and seizure."
Even less "testimonial", or "communicative" in nature, were the objects seized and introduced into evidence in the instant case, they consisting of the hair and blood of the victim, and not the property of defendant at all.
We find no error, therefore, in the court's overruling the motion to suppress (bill No. 2) and allowing the evidence obtained through use of the warrant to go to the jury (bill No. 6).
Bill of exceptions No. 4 is leveled at the failure of the Clerk of Court to read the indictment, as well as the plea of not guilty of the defendant, to the jury prior to the commencement of the taking of testimony, as is provided in LRS 15:333 (1928 Code of Criminal Procedure). State v. Ducre, 173 La. 438, 137 So. 745 is cited as authority to support the defendant's contention that such failure constituted reversible error.
In view of the holding of this court in State v. Leslie, 244 La. 921, 155 So.2d 19, we are of the opinion that this bill is without substance. The record reflects that initially herein the clerk did, inadvertently, omit the reading of the indictment and the plea of not guilty of the defendant to the jury. However, while the state's first witness was testifying the court itself took cognizance of such omission. And at that time it interrupted the proceedings and ordered that the indictment and the plea of the accused be then read. This was done. Incidentally, counsel for the accused offered no objection to the omission as an initial step in the trial.
*514 In State v. Leslie, supra, under similar circumstances, we said: "The reading of the plea to the jury, like the opening statement of the district attorney which follows it in statutory sequence, is mandatory. This means that when timely objection is made to its omission, the failure of the trial judge to require that the plea be read is error. See State v. Gayton, 221 La. 1115, 61 So.2d 890 and State v. Ducre, 173 La. 438, 137 So. 745.
"In the instant case, however, the defense made no objection at the time of the omission. The trial proceeded. The district attorney made his opening statement. Defense counsel waived an opening statement. The district attorney commenced the introduction of evidence. The testimony of two witnesses had been adduced by the state, when objection was raised for the first time. Thereupon, the court required the plea to be read to the jury and overruled the objection. Under these circumstances, we are of the opinion that the right of the defendant to have the plea read in proper sequence was waived.
"* * *
"The defendant relies principally upon State v. Ducre, supra, wherein the Court held that the refusal of the trial judge to order the district attorney to make an opening statement as required by Article 333 of the Code of Criminal Procedure (now LSA-R.S. 15:333) was reversible error. In that case, unlike the present one, the defendant made prompt request of the court for the ruling prior to the introduction of evidence. The case was thus distinguished in State v. Shearer, to which reference has been made." (Italics ours)
Bill of exceptions No. 5 was reserved to the court's permitting Jim Hoffman, who had been qualified by the state as an expert in photography (preparatory to introducing certain photographs), to testify with regard to a sketch he had made of the scene of the crime. The defense contends that the qualification of the witness in the field of photography did not permit his giving testimony with a plat prepared by him.
It was established that the diagram had been drawn by the witness according to the things he had actually seen while he was at the locale. As the trial court observed, when it overruled the objection, "It is within the realm of his own knowledge" to prepare and testify from the sketch. Consequently, no expert qualifications were required for such testimony.
We perceive no error in the court's ruling.
Bills of exceptions Nos. 7 and 9 were taken to the introduction of an inculpatory statement (or confession) of the accused made to law enforcement officers of Tucson, Arizona. There is no contention whatsoever that the statement was not completely voluntary, and the evidence itself shows quite the contrary. The accused voluntarily sought out and surrendered himself to the Tucson police officers, who at such time had no knowledge of the instant crime or that the defendant was wanted as a fugitive; he told them he was probably wanted in Louisiana in connection with the crime; and, after being advised of his right to counsel, he freely recited the facts to which the officers from Tucson testified.
In view of these circumstances, which are not disputed, the guidelines set down in Escobedo v. State of Illinois, 378 U.S. 490, 84 S.Ct. 1758, 12 L.Ed.2d 977, are not applicable. See also State v. Johnson, supra, and State v. Ahrens, 250 La. 391, 196 So.2d 250.
The sole basis for the objection to the statement is that the accused was not offered the services of an attorney as required by the decision in Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. But inasmuch as the trial of this defendant commenced on May 2, 1966, prior to the effective date of the Miranda case (which was June 13, 1966), the decision therein is not applicable. See *515 Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882; State v. Evans, 249 La. 861, 192 So.2d 103; State v. Gregoire, 249 La. 890, 192 So.2d 114; State v. Johnson, supra, and State v. Ahrens, supra.
Moreover, the circumstances recited above of the giving of the statement in the instant case, we think, take it out of the rule laid down in Miranda. Therein the United States Supreme Court prefaced its holding by pointing out that its guidelines were to apply to statements "stemming from custodial interrogation" of the defendant, and that "By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action * * *." And it concluded its discussion with the following observation: "In dealing with statements obtained through interrogation, we do not purport to find all confessions inadmissible. Confessions remain a proper element in law enforcement. Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without the benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." (Italics ours)
The objection to the introduction of the inculpatory statement was, therefore, groundless.
Bill of exceptions No. 10 was reserved to the court's overruling an objection when the Tucson police officers, in the course of relating the inculpatory statement of defendant to them, referred to his admissions (made at the same time) that he had previously (several months before, been convicted of another offense and that he had searched for the prosecuting witness in that case with the intent to kill her if she were found. Bill No. 3 had already been reserved when the district attorney made reference to such admissions in his opening statement, which he was required to do if he intended to later introduce the entire confession into evidence.
We find no error in the rulings. The record shows that the admissions objected to were made in connection with and as a part of the defendant's statement outlining to the officers his participation in the instant crime.
The same contention was made in State v. Maney, 242 La. 223, 135 So.2d 473. Therein we referred to LRS 15:450 (1928 Code of Criminal Procedure) which provided: "Every confession, admission or declaration sought to be used against any one must be used in its entirety, so that the person to be affected thereby may have the benefit of any exculpation or explanation that the whole statement may afford." And we held: The confession is not rendered inadmissible because it admits offenses other than the one for which the accused is on trial and defendant here cannot successfully invoke his contention that the evidence of the injection of heroin by him and his associate, proving another offense, if such were its effect, renders the whole statement inadmissible. The relevancy, therefore, of that portion of the admission which does not bear upon the crime charged is of no consequence if the admission concerning the heroin injection was properly permitted in evidence on the basis that it was part of the same statement containing other inculpatory facts which were relevant to the crime charged and closely associated therewith in point of time. It is not denied that the statement *516 did contain other inculpatory facts which were relevant to this prosecution."
The Maney holding was approved in State v. Evans, 249 La. 861, 192 So.2d 103. See also State v. Bailey, 233 La. 40, 96 So.2d 34, 69 A.L.R.2d 340.
On cross examination of one of the state's witnesses (Deputy Ernest Amos) defense counsel attempted to elicit from him whether the defendant had ever denied committing the crime. The state's objection to the question was sustained and bill of exceptions No. 8 was reserved. We find no error in the ruling.
The cases cited by defendant do not support his contention that the action constituted reversible error. In fact, their holdings are to the contrary. Thus, in State v. Johnson, 35 La.Ann. 968, the court held that certain self-serving statements of an accused were properly excluded and observed: "* * * The rule is undoubted that, when confessions or statements of an accused are offered, they must go in all together; but that only applies to declarations made at one time or having some connection with each other.
"Here we find no connection whatever between the admitted confessions and the rejected declarations, the former having been made six weeks after the latter. Manifestly, the prior self-serving declarations could not weaken the effect of the latter self-incriminating ones. The former are rejected as unworthy of reliance, because springing, presumably, from self-interest; the latter are received for precisely the converse reason." To the same effect are State v. Gunter, 30 La.Ann. 536 and State v. Rutledge, 37 La.Ann. 378.
It is not contended here that the self-serving declarations about which the witness was questioned were made in connection with any confession or inculpatory statement, and particularly, there appears no confession made in the presence of this witness. Moreover, the witness stated unequivocally that he had no recollection of any conversations he might have had with the defendant.
Bill of exceptions No. 11 was taken to the court's accepting the witness Milton Cox, over defendant's objection, as an expert "criminalist"one versed in the skills and techniques involved in laboratory crime detectionto lay the foundation for his testimony connecting blood, hairs, etc., found in the defendant's automobile with that of the deceased, and also showing that shoes found in the possession of defendant contained soil the same or similar to that where deceased's body was found.
The record shows that the trial judge was satisfied as to the witness' qualification. In State v. Stahl, 236 La. 362, 107 So.2d 670, we observed: "* * * The rule is well settled that whether a witness is entitled to be heard in the capacity of expert is within the trial judge's province to decide, and his ruling will not be disturbed where no error appears. * * *"
We have examined the evidence relating to Cox's qualification in the stated field and find that his formal education as well as his practical experience in this area fully justified the court's acceptance of him as an expert. There is, therefore, no merit in the bill.
Bill of exceptions No. 12 was reserved to the testimony of Cox that certain shoes exhibited to him appeared to have been recently washed, it being argued that he had not been qualified as an expert to express an opinion on such matters. We conclude that the court was correct in its observation that the objection was not well grounded for the reason that no special qualifications were required to answer the question and that "anyone of a number of individuals in this court room could perceive and observe that a piece of leather has been soaked and wet and is moist." The bill is without substance.
While the witness was testifying regarding a hatchet which, as had been established *517 by other witnesses, had been taken from the defendant's abandoned truck, he stated that he had found no evidence of blood on the hatchet. Originally he had said that he did not have the hatchet with him. Later he stated that he was in error and that he did have it. When the prosecuting attorney asked to see it defense counsel objected, urging that it was irrelevant since there were no blood stains found on it and that he had not had an opportunity to cross examine the witness about the hatchet because he had said he did not have it. On completion of the state's questioning of the witness, defense counsel was permitted to cross examine him at length about his negative findings with regard to the hatchet. When the state offered to introduce the hatchet into evidence the defendant objected. The court observed (in effect), in ruling on the objection, that out of an abundance of precaution he would sustain the objection. Whereupon defense counsel moved for a mistrial because the hatchet "has been exhibited to the jury and it is prejudicial and defamatory" (inflammatory). Bill of exceptions No. 13 was reserved to the court's overruling the motion for a mistrial.
We find no merit in the bill. First of all we note that, without taking a bill in connection with his original objection or reserving his rights thereunder, defense counsel himself questioned the witness concerning the hatchet. Moreover, it had been shown that the victim had suffered severe fractures and lacerations of the head and upper portion of the body, caused by a fairly sharp and rather heavy object such as a cleaver or hatchet. It had also been shown that the hatchet referred to by the witness had been found in defendant's truck in his presence and to which he had voluntarily directed police officers. Under these circumstances it appears to us that his ownership and possession of such an instrument was relevant, even though no blood stains were found on it. The result of Cox's testimony would not render the introduction less relevant, but would only lessen the probative effect of its having been in defendant's possession, redounding to his benefit rather than to his prejudice. Besides, inasmuch as the court did not permit the hatchet to go to the jury, we do not perceive how merely viewing an ordinary hatchet during the examination of the witness could have caused such alleged inflammatory and prejudicial results in the minds of the jury.
Bill of exceptions No. 14 is directed to the fact that the jury deliberated only one and one-half hours before returning their verdict of guilty. Defendant urges that the short time taken "clearly indicates a lack of serious deliberation upon a matter so serious as the life or death of the accused, and for this factor alone [this bill] should be the basis of a mistrial."
We know of no law requiring any specific time for jury deliberations. Nor can we presume prejudice merely from their reaching an early verdict. Defense counsel says in his brief that the state presented its evidence for two and one-half or three days. The trial judge has not favored us with a per curiam to this bill, but the entire record has been sent to this court and we note that the defense offered no rebuttal evidence whatsoever. In such circumstances we cannot, without a more positive showing, say that the jury erred in its deliberations. The bill is without merit.
Before closing this opinion we feel compelled to note the lack of per curiams by the trial judge. In no instance has he prepared one. Rather, he filed what he terms a "general per curiam" wherein he refers to the pages of the entire transcript (three volumes) that relate to the proceedings during which the respective bills were reserved. While such procedure may, as suggested by the judge, provide a "simple and expedient method" of presenting his views, we do not deem it a satisfactory method of presentation for our appellate review.
For the reasons assigned the conviction and sentence are affirmed.