357 So.2d 508 (1978)
In re Allen PARKER.
No. 60746.
Supreme Court of Louisiana.
April 10, 1978.
*509 R. James Kellogg, Howell & Kellogg, New Orleans, for relator Allen Parker.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Donald Giglio, Norman J. Robinson, Asst. Dist. Attys., New Orleans, for respondent State.
SUMMERS, Justice.
Allen Parker was called as a witness in the trial of his brother Gerald Parker on September 27, 1977. During the course of the trial Allen asserted the constitutional privilege against self-incrimination guaranteed by the Fifth Amendment to the Federal Constitution and Section 16 of Article I of the Louisiana Constitution. The trial judge held that his claim was not well-founded, and when he refused to answer a question propounded by the State's attorney Allen was held in contempt of Court. Sentence was deferred to allow him to apply to this Court for a review of the trial judge's finding. We ordered that the sentence be imposed and stayed its execution pending determination of the issue presented.
In the meantime Gerald was convicted on two counts of first degree murder and sentenced to death. His appeal is pending in this Court.
*510 Testimony adduced at the trial before Allen was called to the stand as a witness established that Popeye's Fried Chicken, a fast food outlet in New Orleans, was robbed on October 1, 1976. Two employees, Leathea Woodward and Joseph Morgan, were robbed and forced at gun-point into a large walk-in cooler. They were made to kneel and both were shot in the head and killed. Subsequently three spent .38-caliber pellets were recovered, two from the bodies of the victims and the third from the cooler wall. Gerald's fingerprints were found at the scene of the crime.
Thereafter a Winn-Dixie Supermarket in Donaldsonville, Louisiana, was robbed of $9,696 by three Negro males on October 18, 1976. The manager and another employee were forced into a rear walk-in cooler and ordered to kneel. Three Negroes were observed fleeing from the scene and local police were alerted. Following a high speed chase, two of the three suspects were captured and identified as Gerald Parker and Frazier Parker, Gerald's cousin. Money and other effects taken during the robbery were recovered, together with a .38-caliber revolver. A subsequent examination and test determined that the revolver was the gun which fired the fatal shots in the robbery at Popeye's.
Further investigation disclosed that the revolver was sold to Delores Wilson on July 2, 1974 by Delort Hardware Company. The gun was thereafter used for protection by her husband, who was a driver for a day care center. Allen's three children were being driven to the Day Care Center by Wilson on December 15, 1975 when he was in an accident on Valence Street in New Orleans. Allen was called to the scene of the accident to pick up his children. While there he saw the revolver in Wilson's car and stole it.
When questioned by police on November 1, 1976 Allen stated that he had stolen the revolver from Wilson's wrecked car and it remained in his possession until the latter part of September 1976. At that time he loaned it to his brother, Gerald, who said he needed it for protection. On these admissions Allen was arrested on November 11, 1976 and charged with theft of the gun valued at $100.
Gerald's fingerprints matched the one lifted by police from the scene of the October 1 killing at Popeye's Fried Chicken outlet. With this and other evidence the grand jury of Orleans Parish indicted Gerald Parker and Frazier Parker for the first degree murders of Leathea Woodward and Joseph Morgan. A severance was granted and Gerald Parker was tried alone. Allen Parker was subpoenaed by the State as a material witness.
On the day set for Gerald's trial the Attorney General and the District Attorney filed a grant of immunity to Allen pursuant to Article 439.1 of the Code of Criminal Procedure "protecting him from prosecution with regard only to the arrest of Allen Parker on November 11, 1976 . . . relative to theft of property valued at $100.00 (La.R.S. 14:67)."
At the trial the State called Allen as a witness. When questioned concerning the involvement of his children in the December 15 accident while in Wilson's car, Allen refused to answer on the ground of self-incrimination. Outside the presence of the jury defense counsel stated that, since the District Attorney announced he intended to ask questions relating to possession of the gun at the time of its theft and thereafter, the defense objected to any questions touching upon possession of the murder weapon by Allen after it was stolen from the wrecked car on December 15. Asserting that testimony by Allen that he possessed the murder weapon before and after the October 1 murder would implicate him, not only in the theft of that gun, but in the murder of October 1, 1976 as well, Allen therefore refused to answer questions to that effect. Furthermore, defense counsel stated that he would challenge the authenticity of Allen's prior statements to the police. It was the defense position that if he testified he would say that he gave the weapon to his brother after the October 1 murders instead of the latter part of September, prior to the murders, as the police *511 statements represented. Therefore, unless the State was prepared to grant immunity from prosecution for the murders also Allen would not testify concerning when he possessed the murder weapon. But the prosecution would not accede to this request, stating that if it did Allen would testify that he committed the murders, thereby creating doubt as to the guilt of his brother Gerald. And, by reason of the grant of immunity, Allen would walk out of the courtroom immune from prosecution.
The trial judge was of the opinion that if Allen testified that he was in possession of the gun on the date of the murders, without more, that testimony would not incriminate him in the murders. According to the trial judge, other testimony directly incriminating the witness in the murders would be necessary, such as participation in the crime or furnishing the weapon to the actors with knowledge that it would be used for an armed robbery or murder.
Questioning was resumed when the jury was returned to the courtroom. Allen was then asked if he gave the stolen gun to his brother Gerald in the latter part of September 1976. He refused to answer on the ground that the answer would tend to incriminate him. Under pain of contempt of court the trial judge ordered him to answer with only the limited immunity from prosecution for theft which had been tendered by the State. Again the witness refused to answer on the ground that the testimony would tend to incriminate him; whereupon he was held in contempt of court.
Allen's position is that Article 439.1 of the Code of Criminal Procedure[1] does not authorize a limited grant of immunity. Instead, it is contended, the Article provides that when immunity is granted "no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case," except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order. (emphasis added.)
"No person . . . shall be compelled in any criminal case to be a witness against himself." This Fifth Amendment privilege against self-incrimination in the Federal Constitution is embodied in Louisiana's Constitution in the clause, "No person shall be compelled to give evidence against himself." La.Const. art. I, § 16. A privilege against self-incrimination is an outgrowth of resentment to the inquisition and Star Chamber proceedings, where compelling an admission of guilt from the lips of the accused was a feature of that ancient form of prosecution. The privilege is an expression of America's sense of fair play which requires the government to honor the presumption *512 of innocence. 3 Wharton's Criminal Procedure § 391 (12 ed 1975). This guarantee against testimonial compulsion, like other provisions of the Bill of Rights, was added to the Constitution with the conviction that too high a price may be paid even for the unhampered enforcement of criminal law to the prejudice of other objectives indispensible to freedom in a civilized society. Cf. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). The principle expressed in the Federal Constitution was made applicable to the States in Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), where the United States Supreme Court declared:
". . . The Fourteenth Amendment secures against state invasion the same privilege that the Fifth Amendment guarantees against federal infringement the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will.

. . . . .
". . . What is accorded is a privilege of refusing to incriminate one's self, and the feared prosecution may be by either federal or state authorities . . It would be incongruous to have different standards determine the validity of a claim of privilege based on the same feared prosecution, depending on whether the claim was asserted in a state or federal court. Therefore, the same standards must determine whether an accused's silence in either a federal or state proceeding is justified."
A privilege against self-incrimination must be liberally construed in favor of the accused or witness. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951). While the accused may assert the privilege as an excuse for refusing to take the stand, a witness may assert the privilege only with respect to particular questions. Because the privilege is personal to the witness who may be incriminated, a defendant in a criminal trial cannot claim the privilege for the witness. State v. Evans, 249 La. 861, 192 So.2d 103 (1966), cert. denied, 389 U.S. 887, 88 S.Ct. 110, 19 L.Ed.2d 187 (1967).
Claiming this privilege sometimes impedes investigations and prevents prosecutions for crimes. For these reasons the administration of justice supports the proposition that an individual can be compelled to give testimony incriminating himself if he is granted immunity from prosecution and punishment as a quid pro quo for compelled testimony. State v. Rodrigues, 219 La. 217, 52 So.2d 756 (1951). Article 439.1 of the Code of Criminal Procedure confers upon the Attorney General and the District Attorney, acting together, the authority to grant such immunity. Implicit in such a grant of immunity, however, is the requirement that the immunity granted be coextensive with the constitutional privilege against self-incrimination. Stevens v. Marks, 383 U.S. 234, 86 S.Ct. 788, 15 L.Ed.2d 724 (1966). State v. Ford, 233 La. 992, 99 So.2d 320 (1958).
When the statutory requirements are complied with a grant of immunity under Article 439.1 is a broad grant against the use of the testimony which the witness refuses to give on the basis of his privilege against self-incrimination "in any criminal case" if the testimony is compelled "under the order."
The problem this case presents, therefore, is whether the testimony which Allen Parker refused to give is protected by the immunity order. The Court is of the view that it is not and, consequently, it was error for the trial judge to order Allen to testify beyond the scope of the grant of immunity about facts which would tend to incriminate him.
The grant of immunity protected Allen Parker from prosecution "with regard only to the arrest of Allen Parker on November 11, 1976 . . . relative to theft of property valued at $100.00 (La.R.S. 14:67)." On its face the document contained no grant of protection against prosecution and punishment for possible implication in the double murder of October 1 at Popeye's Fried Chicken outlet.
*513 Because of his declared intention to testify that he was in possession of the murder weapon before and after the October 1 murders, and the announcement of the District Attorney that the grant of immunity would not apply to evidence implicating him in the murders, Allen was justified in refusing to comply with the judge's order to answer the questions relating to his possession of the murder weapon shortly before October 1, the date of the murder.
Allen stated that he would recant the statement given to police just prior to his arrest and would testify that he retained possession of the weapon until after October 1. Such a contradictory statement in the context of the facts and circumstances in the instant case appears to lack credibility. However, there remains a rational connection between the possible answers to the District Attorney's question (asking Allen if he gave the gun to his brother Gerald in the latter part of September 1976) and Allen's implication in the murders shortly thereafter, either as a participant or a conspirator in the crime.
Testimony which tends to incriminate may be direct or indirect, or it may form a link in a chain of circumstances that might result in prosecution and punishment. People v. Rockola, 346 Ill. 27, 178 N.E. 384 (1931). It is this fear which is protected by the privilege against self-incrimination. McPhaul v. United States, 364 U.S. 372, 81 S.Ct. 138, 5 L.Ed.2d 136 (1960); State v. Williams, 301 So.2d 587 (La.1974). To sustain the privilege, it need only be evident from the implication of the question, in the setting in which it is asked, that a responsive answer would disclose facts which could be used against the witness in a future prosecution for crime. The answer need not be the full case against the witness. Hoffman v. United States, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118 (1951).
Based on these principles, it was not necessary that Allen's possession of the murder weapon at the time of the murder be supported by other evidence that he participated in the crime or gave the gun to his brother knowing that it would be used in a robbery and murder. Possession of the murder weapon at a time closely related to the crime was itself incriminating.
For the reasons assigned, the conviction of contempt of court for failure to testify is reversed and set aside, and Allen Parker is released from the obligation on his bond.
NOTES
[1] La.Code Crim.Pro. art. 439.1:

"A. In the case of any individual who has been or may be called to testify or provide other information at any proceeding before or ancillary to a grand jury of the state, at any proceeding before a court of this state, or in response to any subpoena by the attorney general or district attorney, the judicial district court of the district in which the proceeding is or may be held shall issue, in accordance with Subsection B of this article, upon the request of the attorney general together with the district attorney for such district, an order requiring such individual to give testimony or provide other information which he refuses to give or provide on the basis of his privilege against self-incrimination, such order to become effective as provided in Subsection C of this article.
"B. The attorney general together with the district attorney may request an order under Subsection A of this article when in his judgment
(1) the testimony or other information from such individual may be necessary to the public interest; and
(2) such individual has refused or is likely to refuse to testify or provide other information on the basis of his privilege against self incrimination.
"C. The witness may not refuse to comply with the order on the basis of his privilege against self incrimination, but no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order.
"D. Whoever refuses to comply with an order as hereinabove provided shall be adjudged in contempt of court and punished as provided by law."