LINDSAY, Judge.
The petitioner, New Bethany Baptist Church, has applied for the exercise of our supervisory jurisdiction to review rulings by the trial court arising from an investigation of alleged child abuse. This case concerns intervention of the Louisiana Department of Social Services into the operation of a girls’ home by New Bethany Baptist Church. New Bethany complains of ex parte orders issued by the trial court allowing removal of children at the discretion of child protection authorities, requiring the staff at the home to submit to interviews by the department and requiring staff to submit to psychiatric, psychological or physical examinations. For the following reasons, we affirm in part and reverse in part the rulings of the trial court.
FACTS
New Bethany Baptist Church, located near Arcadia, is pastored by Reverend Mack Ford. On the premises, the church operates a home for girls.[1] Most of the children in the home appear to be troubled youth who are placed at the facility by their parents.
The school stresses a structured environment in which the girls study during the day from workbooks, perform chores and attend church services. Newspapers, radios and televisions are not allowed. Once each month the girls are allowed one five-minute telephone visit with their parents.
On June 8,1988, two girls ran away from the home. They found their way to the Louisiana Department of Social Services in Shreveport. They reported abusive conditions in the home and denial of medical and dental care to some of the children.
On June 9, 1988, the parish manager for the Claiborne, Webster and Bienville Parish offices of the Department of Social Services, Mr. Watson Armstrong, contacted the church to discuss the situation. Mr. Armstrong was told that Reverend Ford was out of town. On June 14, 1988, Armstrong went to the premises to investigate the reports of abuse and neglect but was denied access.
On June 14,1988, Armstrong obtained an ex parte order from the district court based upon his affidavit that there were reasonable grounds to believe that the girls who were residing at the home and school were being abused or neglected. The order granted authority to enter, interview and examine the children and persons responsible for their care. Authority was also granted to remove the children if reasonable grounds existed to believe that the children were abused, neglected or in need of care. The order further provided that if any of the children were taken into immediate custody, the state was required to file a *1217 verified complaint within twenty-four hours.
Pursuant to this order, officials of the Department of Social Services went onto the church property to conduct their investigation. The officials later testified that they found reasonable grounds to believe that the children were subject to abuse and neglect. Twenty-eight girls expressed a desire to leave with the officials. Whereupon they were taken from the premises, removed from church custody and placed in the custody of the state.
On July 7, 1988, a similar ex parte order was issued concerning some of the other children, mainly boys, housed at the church facility. However, the record presently before this court does not show what action was taken pursuant to this order.
On June 15, 1988, a hearing was held to determine the continued custody of the girls who were removed from the home on June 14, 1988. Counsel for New Bethany contend they were not allowed to participate in the hearing.
Sixteen girls testified at the hearing and related similar accounts regarding conditions in the home. They stated that they were frequently paddled by the staff and that these paddlings often left bruises. Discipline also included beatings at the hands of the other girls with the approval of the sthff, cleaning out animal pens with bare hands and being forced to eat soap. Several girls related instances in which the children were denied medical and dental care. During church services, the girls were frequently called derogatory names. The church staff often prayed that if the girls could not behave that God would either kill them or a close family member.
Incoming and outgoing mail was censored. Monthly telephone conversations with parents were also monitored and if a child complained of conditions at the home, the phone call was immediately terminated by a staff member.
During the hearing, none of the girls were cross-examined. None of the New Bethany staff members were called to testify.
At the conclusion of the hearing, some of the girls were released into the custody of their parents. One was found to be eighteen years old and not subject to the court’s juvenile jurisdiction. Fifteen girls were found to be in need of care and their custody was continued with the state.
On July 7, 1988, the trial court issued another ex parte order allowing child protection authorities to again enter the New Bethany premises, make psychological, physical or psychiatric examinations of the children and their caretakers and interview caretakers. The order required New Bethany to supply a list of names and home addresses of the children at the home and all employees, staff members and volunteers working at the home. The order empowered child protection authorities to remove any child whom the officers had reasonable grounds to believe were abused, neglected or in need of care.
On July 12, 1988, New Bethany filed a motion for a protective order from the ex parte order of July 7. New Bethany also filed a motion requesting that the July 7 order be amended to allow interview questions to be posed by child protection authorities by means of written interrogatories, with New Bethany responding thereto. Both motions were denied July 12, 1988.
On July 12, 1988, New Bethany gave the district court notice of its intent to apply for supervisory writs. A seven day stay order was granted pending filing of the writ application.
On July 19, 1988, New Bethany filed its writ application with this court. In that application, New Bethany argued that LSA-R.S. 14:403 does not authorize ex parte orders requiring caretakers of children to undergo examinations without a factual showing of necessity nor does it require caretakers to submit to interviews by child protection authorities investigating alleged abuse or neglect. New Bethany also argued that requiring the caretakers to submit to interviews and examinations violated the right against compulsory self-incrimination and that requiring such action by means of an ex parte order, without *1218 any notice to New Bethany or opportunity for a hearing, violated the right to due process.
On July 28, 1988, this court granted New Bethany’s writ application, staying the trial court’s ex parte orders, directing that the record be lodged and ordering the parties to brief the issues raised by New Bethany in its writ application.
In its brief, New Bethany essentially objects to the issuance of the ex parte orders on June 14 and July 7, 1988, as set forth in its writ application, and also raises new arguments regarding procedural defects in the proceedings. New Bethany also presents a new issue, not assigned as error in the writ application, regarding the correctness of the June 15 trial court judgment continuing custody of the girls with the state.
New Bethany continues to assert that the portion of the ex parte orders which requires caretakers to submit to examinations and interviews violates their rights against compulsory self-incrimination and their rights to due process.
In addition, the ex parte orders are attacked as being procedurally defective. New Bethany claims there was insufficient evidence contained in the affidavit filed in support of the ex parte orders to justify a finding that reasonable grounds existed to believe the girls were abused, neglected or in need of care.
New Bethany claims that ex parte orders are to be used only in exceptional circumstances, which did not exist in this case, that the state failed to file verified complaints within twenty-four hours of removal of the girls from New Bethany's custody and that it was error to hold a hearing for continued state custody without a showing that the state had properly obtained custody in the first place.
New Bethany claims that at the hearing for continued custody, the children had a right to counsel and there is no showing that they were informed of this right or that the right to counsel was waived by the girls or by their parents.
New Bethany also claims that the state did not timely file its petition to adjudicate the children remaining in state custody to be children in need of care. New Bethany contends that within thirty days following the continued custody hearing, the state was required to file a petition seeking an adjudication that the children were in need of care. If the petition is not timely filed, LSA-C.J.P. Art. 46(B) requires that the children be released. New Bethany asserts that the petition in this case was not filed until forty-one days following the hearing.
New . Bethany requests that either the trial court orders and judgments be reversed and the action dismissed or, in the alternative, that the orders be reversed and the matter remanded with instructions that if the investigation is to continue, that New Bethany be permitted to appear and defend itself.
ORDER OF JUNE 14, 1988
On June 14, 1988, the trial court issued an ex parte order, based upon the affidavit of Watson Armstrong, finding reasonable grounds to believe that some of the children at the home were abused or neglected and authorizing a further investigation of conditions at the home, all under the authority of LSA-R.S. 14:403.
This order granted the Louisiana Department of Social Services authority to enter the church premises to investigate the claims of abuse and neglect, and to question and examine not only the children, but also persons responsible for their care.
The order also granted the authority to remove any child from the home if the investigating officials found reasonable grounds to believe that the child was abused or neglected. In the event a child was removed from the home, the State was ordered to file a verified complaint within twenty-four hours as required by the Louisiana Code of Juvenile Prodecure.
New Bethany claims that, under the statutory scheme of LSA-R.S. 14:403 and the Code of Juvenile Procedure, this ex parte order was defective and should be declared null and void.
*1219 New Bethany claims that good cause was not shown to authorize the initial entry onto the premises, nor was good cause shown to require the caretakers of the children to submit to interviews and examinations. New Bethany also contends that there was no showing of a substantial immediate danger to the children requiring emergency removal.
After a review of the statutory scheme and the actions taken by the trial court, we find that the order issued June 14, 1988 was in compliance with the law insofar as it allowed child protection authorities to enter the premises and to interview the children and their caretakers. The order was defective in purporting to grant authority and discretion to child protection authorities to immediately remove children from the home and to require submission of the children and/or their caretakers to physical, psychiatric or psychological examinations. Those portions of the order concerning removal of the children and psychological, psychiatric and physical examinations are declared to be null and of no further force and effect.

Proceedings Concerning Child Abuse Or Neglect

[2]

LSA-R.S. 14:403 provides the basic scheme for investigating claims of child abuse by child protection authorities.[3] That statute provides, in pertinent part:
G(2)(a) Upon receiving a report of sexual abuse, abuse, or neglect of a child who is not in the custody of the state, the local child protection unit shall promptly make an investigation in order to ascertain whether child abuse or neglect or sexual abuse has occurred.
(b)(i) This investigation shall include a preliminary investigation as to the nature, extent, and cause of the abuse, neglect, or sexual abuse and the identity of the person or persons actually responsible for the child’s condition. The preliminary investigation shall include an interview with the child and his parent or parents or other caretaker.
(ii) If admission to the home, school, or any other place where the child may be cannot be obtained, the investigator shall apply to the court with juvenile jurisdiction for an order authorizing an entry for investigation. Upon affidavit and with good cause shown, the court shall order the parent or other caretaker or the person or persons in charge of any place where the child may be to permit the entry for an interview or other investigation of the report.
(c) Upon determination that there is reason to believe that the child has been abused or neglected or sexually abused, the local child protection unit shall conduct a more intensive investigation. If necessary, the investigator may also apply for an order from the court with juvenile jurisdiction for a physical, psychological, or psychiatric examination of the child, other children in the home, or the parent or caretaker. Upon affidavit and with good cause shown, the court shall order the parent or caretaker to permit such examinations.
(d) In determining the disposition of the report, the agency shall take into account, in mitigation, the possibility of accidental injury or condition, or that the injury resulted from what might be considered a reasonable exercise of discipline for the child’s misbehavior.
*1220 (e) After investigation, the local child protection unit shall make one of the following determinations:
(i) The child appears to be a child in need of care and his immediate removal is necessary for his protection from further abuse or neglect, in which case, whenever such extraordinary justification arises, it shall apply for an emergency removal order authorized by the Code of Juvenile Procedure and shall notify the district attorney as soon as possible.
(ii) The report appears to be justified, in that there is evidence of child abuse or neglect or sexual abuse, in which case it shall report all pertinent information to the district attorney for evaluation of whether a child in need of care petition should be filed in the court with juvenile jurisdiction.
(iii) There is some need for medical, mental health, social, or other services to be provided to the child, his family, or his caretaker, in which case it shall make all appropriate referrals for such services.
(iv) The report is inherently improbable, involves an accidental injury or otherwise does not constitute child abuse or neglect or sexual abuse.
(v) The report was false and the investigation indicates the reporter knowingly made a false report.
Under the statutory scheme, there are generally two phases of investigation into reports of child abuse or neglect.[4] First, a preliminary investigation is conducted. The preliminary investigation must include an interview with the child and his parent, parents, or other caretaker. LSA-R.S. 14:403G(2)(a).
If the investigating authorities are denied admission to the place where the child is kept, they may apply to a court with juvenile jurisdiction for an order to permit entry onto the premises in order to conduct the interviews during a preliminary investigation. Upon an affidavit, with good cause shown, the court has authority to issue orders to permit entry for an interview or other investigation of a report of child abuse or neglect. LSA-R.S. 14:403G(2)(b)(ii).
If there is reason to believe the child is the subject of abuse or neglect, the child protection authorities are to conduct a more intensive investigation. This stage of the investigation may require physical, psychiatric or psychological examinations of the child, other children in the home, or the parent or caretaker. Upon an affidavit, with good cause shown, the court may order the parent or caretaker to permit such examinations. LSA-R.S. 14:403G(2)(c).
After completing its investigation, the child protection authorities are in a position to make a determination as to whether the child is, in fact, the subject of abuse or neglect.
If the child is found to be in need of care and his immediate removal is necessary for protection from further abuse or neglect, the child protection authorities are to apply for an emergency removal order in the manner set forth in the Code of Juvenile Procedure.
Under LSA-C.J.P. Art. 25, the court may issue an order that a child be taken into custody upon presentation to the court of a written, verified affidavit of a peace officer, probation officer, district attorney, or other person designated by the court, alleging facts showing reasonable grounds to believe the child is in need of care. In exceptional circumstances, the court may orally order a child taken into custody after being orally informed of the exceptional circumstances. The written verified complaint is to be filed within twenty-four hours and a written court order issued. LSA-C.J.P. Art. 27.
*1221 A child may be taken into custody without a court order if a peace officer or probation officer has reasonable grounds to believe that the child’s surroundings are such as to endanger his welfare, and that immediate removal appears to be necessary for his protection. LSA-C.J.P Art. 30. If a child is taken into custody without a court order, the officer must make a report to the district attorney. If a child is taken into custody without a court order, and the child is not released into the custody of a parent, the parents must be promptly notified that the child has been taken into custody. LSA-C.J.P. Art. 33.
The term “parent” is defined by the Code of Juvenile Procedure. “Parent” means either parent if they are married and living together. If one parent is dead or if the parents are divorced, legally separated, separated in fact, or unmarried, it means a person having legal or actual custody of the child. If no parent has legal or actual custody, it means the person, institution, agency, or association of persons having legal or actual custody.
If the child is not released into the care of his parents, a hearing must be held by the court within seventy-two hours to determine whether to continue the child in custody. LSA-C.J.P. Art. 38. One ground for continuing custody in the state is that the parents have neglected or refused, when able to do so, to provide support, education, medical, or other care necessary for his well-being. LSA-C.J.P. Art. 40(6). If a child is continued in custody in an abuse or neglect proceeding, a petition must be filed within thirty days of the continued custody hearing to have the child adjudicated in need of care. LSA-C.J.P. Art. 46, subd. A(2). In such a case, the adjudication hearing is to be set within thirty days of the answer to the petition. LSA-C.J.P. Art. 67.

Law Applied To The Order of June lit, 1988

In light of the facts of this case, and the law applicable, we now turn to an examination of the contested court order of June 14, 1988. The affiant, Watson Armstrong, had reports of child abuse from two residents who had run away from the home. These girls provided detailed accounts of child abuse and neglect, establishing good cause for a preliminary investigation of the reports. Based upon the affidavit, showing good cause, the trial court was correct in issuing an ex parte order to allow entry onto the premises and to require interviews with the children and their caretakers.
The statute requires interviews of not only the children, but their caretakers, as a part of the preliminary investigation. The purpose of this provision seems aimed at allowing caretakers an opportunity to explain or rebut any claims of child abuse or neglect before the proceedings progress to a more intrusive stage.
Under the statutory scheme, if, after interviewing the child and the caretaker, the claims are found to be baseless, no further steps are taken nor are proceedings instituted. However, if the claims are not found to be baseless, a more intensive investigation may be conducted. This intensive investigation may include, if necessary, physical, psychiatric and psychological examinations of the child and the caretaker.
Under the facts of this case, the affidavit submitted to the court did not establish that the preliminary investigation had been concluded (even though the affidavit asserted that the preliminary investigation was complete). Although the department had a report of child abuse of children at the home, the children continuing to reside at the home had not been interviewed, nor had their caretakers. Therefore, the trial court acted prematurely and in error in ordering examinations of the children and their caretakers in its ex parte order and consequently, that portion of the order is declared null and is stricken.
The ex parte order also purported to allow child protection authorities to remove children from the home if they found reasonable grounds to believe that the children were abused or neglected. This portion of the order is erroneous because the *1222 affidavit supporting the order does not establish that the investigation is complete or that there is good cause to believe the children should be removed.
The procedure outlined in LSA-R.S. 14:403 does not contemplate, during a preliminary investigation, an ex parte order authorizing removal of children from the premises. Under the statutory scheme, if, after completing the investigation, extraordinary justification arises for removal of a child, the child protection authorities may petition the court for a further ex parte order authorizing the emergency removal based upon good cause shown.
In the instant case, that portion of the order giving discretionary authority to the child protection authorities to remove the children if, in their opinions, evidence of neglect or child abuse was found, was also premature and unauthorized. Consequently, that portion of the June 14 ex parte order authorizing removal is null and without force or effect.
As set forth above, we note that LSA-C.J.P. Art. 30 allows removal of children without court order if necessary for their protection. As to the twenty-eight girls removed from the home on June 14, 1988, the record establishes that their removal without court order was also improper.
No allegation has ever been made that the children were removed under the authority of LSA-C.J.P. Art. 30. On the contrary, the State has always contended that it was acting under the authority of the ex parte order issued by the trial judge on June 14, 1988. It is clear from the record that while the child protection authorities were on the premises on June 14, they did not believe that there were extraordinary circumstances present, justifying emergency removal of the children without a court order, inasmuch as the State only removed those children from the home who expressed a desire to leave. The children who expressed a desire to remain at the home were allowed to do so by the State.
Further, at the continued custody hearing, it was not established that immediate removal of the twenty-eight girls without a court order was necessary. No evidence was presented showing that the authorities felt it necessary to remove the twenty-eight girls who desired to leave and yet left twenty-four girls at the home. If emergency circumstances had existed, it would be expected that all the children would have been removed, rather than strictly those who had expressed the desire to leave the home. This clearly shows that the authorities did not believe that extraordinary circumstances existed which would support removal of the children without court authority. Therefore, the initial removal of the girls and their initial placement in state custody was without proper authority.
Accordingly, in light of all the above, we find that those portions of the June 14, 1988 ex parte order authorizing examinations of the children and their caretakers, as well as the removal of children at the discretion of child protection authorities were invalid. Further, we find that the state has failed to adequately show that the removal was proper, absent court authority.

The Continued Custody Hearing and Judgment of June 15, 1988

A hearing to determine whether to continue custody of the children in the state was commenced within seventy-two hours of the time they were taken into custody as required by LSA-C.J.P. Art. 38. However,New Bethany contends that this hearing and the resulting judgment continuing fifteen girls in state custody were invalid.
New Bethany makes numerous arguments concerning procedural defects in the hearing and judgment. New Bethany contends that the hearing and judgment were invalid because the children were not afforded counsel, the state failed to file a petition to have the children adjudicated in need of care within thirty days following the hearing and that New Bethany’s right to due process was violated because it was not allowed to participate at the continued custody proceeding. Although we address hereafter New Bethany’s claim that its due process rights were violated, the issues *1223 surrounding the continued custody hearing and the resulting judgment need not be discussed at this time as the June 15 judgment is now moot.
Even if the hearing and judgment were defective, release and return of the children to their caretaker would be the only appropriate remedy. New Bethany has specifically stated that return of the children continued in state custody is not sought or desired. Therefore, because no relief can he granted, the June 15 judgment is moot. The State’s right to institute future proceedings to have the children adjudicated in need of care would not be affected by any procedural deficiencies that might exist regarding the June 14 ex parte order or the June 15 judgment. State in the Interest of Alexander, 372 So.2d 1243 (La.App. 4th Cir.1979); State in the Interest of Brown, 372 So.2d 1246 (La.App. 4th Cir.1979).
Therefore, the issues regarding the validity of the June 14 order and the June 15 hearing are moot at this time because no relief can be granted, other than to find portions of the ex parte order to be invalid. We note, however, that in proceedings of this type, the state, in order to protect the interests of the children involved, as well as the rights of all parties, must adhere to the procedures set forth in LSA-R.S. 14:403 and the Code of Juvenile Procedure.
ORDER OF JULY 7, 1988
On July 7, 1988, the trial court issued another ex parte order. During the course of the department’s investigation of New Bethany, information came to light that several boys who were also housed at the home were allegedly subjected to the same abuse and neglect as that suffered by the girls. It was also learned that the boys and one girl were hidden from child protection authorities during the first investigation conducted on June 14, 1988. An affidavit was prepared which set forth that reports of child abuse were made by twenty-eight girls removed from the home on June 14, 1988 and also that Louisiana authorities had received a referral in the matter from the South Carolina Department of Social Services. It was alleged that New Bethany operated a home for boys in South Carolina. Some of these boys were moved to Louisiana shortly prior to the June, 1988 investigation.
Based upon the showing made in the affidavit, the court issued an ex parte order similar to that which was issued on June 14, 1988. This order required New Bethany to allow entry onto the premises by child protection authorities, allow interviews with the children and their caretakers, allow physical, psychiatric and psychological examinations of the children and their caretakers, and to allow removal of the children if circumstances were found to exist necessitating their removal. In addition, New Bethany was required to furnish the Department of Social Services with a list of the names and addresses of the children at the home, and also names and addresses of caretakers, teachers and employees of the home.
The record does not show, what, if any, action was taken by the state pursuant to this ex parte order. However, it is stated in the briefs that child protection authorities entered the premises, pursuant to the order, but employees of New Bethany refused to answer questions and no children were removed from the home.
On July 12, 1988, in response to the trial court’s ex parte order, New Bethany filed a motion for a protective order seeking relief from those portions of the ex parte order requiring the pastor and staff of New Bethany to submit to interviews and examinations and allowing removal of the children at the discretion of child protection authorities. This motion for protective order was denied. In its writ application, New Bethany asks that the ex parte court order be rescinded for the same reasons argued for nullity of the court order of June 14, 1988.
The same legal principles previously discussed apply to this issue, but resolution of the question as to the validity of this court order must be evaluated according to the facts peculiar to it.
In light of the investigation conducted pursuant to the prior court order, child *1224 protection authorities were at a different stage in the investigatory process at the time the July 7, 1988 order was issued. The preliminary investigation regarding reports of abuse and neglect at the home had been concluded. New Bethany personnel had refused entry of child protection authorities onto the premises without court order, had refused to be interviewed and had hidden the boys who were staying at the home, thereby preventing authorities from interviewing these children. In light of the totality of the circumstances, including the lack of cooperation by New Bethany personnel and the reports of child abuse and neglect obtained during the interviews and the in-court testimony of the twenty-eight girls removed from the home, the trial court correctly issued the ex parte order on July 7, 1988 authorizing not only entry onto the premises and interviews with the boys and their caretakers, but also authorizing physical, psychiatric and psychological examinations of the boys.
However, for the same reasons previously outlined relative to the affidavit and order of June 14, 1988, the affidavit does not support those portions of the court order requiring examinations of the caretakers and granting to child protection authorities the discretion to remove children from the home if they deem such action necessary. Therefore, only those portions of the order requiring examinations of the caretakers and allowing discretionary removal of the children are invalid and stricken from the order.[5] Those portions of the order allowing entry onto New Bethany’s premises to conduct an investigation, ordering that interviews be conducir ed with the children and their caretakers, and ordering that the children be made available for physical, psychiatric and psychological examinations were proper, are not rescinded and remain in effect.
DUE PROCESS
New Bethany argues that it was denied its right to due process in not being given notice before the issuance of the ex parte orders or before the continued custody proceeding. This argument is without merit.
The determination of what procedural safeguards are required in order to meet due process standards depends upon the nature of the proceeding and the nature of the right or interest affected by the proceeding. State in the Interest of Howard, 882 So.2d 194 (La.App. 2d Cir.1980). LSA-R.S. 14:403 states that its purpose is to protect children who are abused or who are substantially at risk of harm by abuse or neglect and who may be further threatened by the conduct of those responsible for their care and protection. This overriding interest in the welfare and protection of children validates ex parte orders such as those authorized by the statute.
The Louisiana statutory procedure does provide for notice to the caretakers or parents before parental rights are indefinitely or permanently terminated and provides an opportunity to appear and defend at an appropriate stage in the proceedings, such as a hearing to adjudicate a child “in need of care.” However, the investigatory stage and the stage at which a court must decide whether a child in custody shall remain in state custody pending further proceedings are interim stages in which an expeditious determination of the best interest of the child is paramount. In addition, at these early stages of the proceedings, parents or caretakers are not faced with permanent or indefinite deprivation of their rights to custody and control of the child. For these reasons, the statutory scheme does not provide for formal notice or a contradictory hearing at these stages of the proceedings.
Even though the parent or caretaker has no right to formal notice of the continued custody proceeding, if such a party does appear at the hearing, the trial court should grant an opportunity to be heard. To do less may amount to an abuse of discretion. Here, however, New Bethany’s claim in its brief that its counsel was *1225 present at the continued custody hearing and the trial court denied New Bethany an opportunity to be heard is not supported by the record.
Further, we find meritless New Bethany’s argument that local court rules of the Second Judicial District Court require notice to parents and caretakers before conducting a continued custody hearing. The local court rule relates to permanent custody adjudications and has no application to the present case.
When the state files a petition to have a child adjudicated in need of care, it thereby seeks removal of the child from parental custody for an indefinite or prolonged period of time. It is at this point that the parent’s due process interests must be protected. State in the Interest of Howard, supra.
LSA-C.J.P. Art. 51 sets forth the notice requirements following the filing of a petition for adjudication of a child in need of care. That article provides that the court shall issue a summons commanding the child, parents and other persons the court deems proper to appear before the court at a designated time and place. A copy of the petition and a written statement of the right to counsel are also to be served with the summons. At the adjudication hearing, the child and his parents may introduce evidence, call witnesses, be heard on their own behalf, and cross-examine witnesses called by the state. LSA-C.J.P. Art. 70. This procedure allows full procedural due process to protect the interest of any parent or caretaker faced with deprivation of the right of custody or control of a child, including New Bethany. In this case, because we are not dealing with the adjudicatory stage of the proceedings, New Bethany’s rights to due process have not been denied.
SELF-INCRIMINATION
New Bethany argues that the court order requiring its staff members to submit to interviews regarding the children violates the right against compulsary self-incrimination. New Bethany contends the court order requires caretakers of the children to answer questions regarding care of the children which could potentionally be used against them in criminal proceedings. New Bethany also argues that refusal of its employees to answer the questions may cause them to be found in contempt of court for failure to comply with the court order.
LSA-R.S. 14:403 has as its basis the important and significant state interest of protecting the welfare of children. The statute specifically requires caretakers of children to submit to interviews by child protection authorities during the investigation of claims of child abuse and neglect. It is foreseeable that in some cases, statements made in such interviews could subject caretakers to criminal prosecution.
The Fifth Amendment to the United States Constitution provides that no person shall be compelled in any criminal case to be a witness against himself. The Fourteenth Amendment to the United States Constitution makes this protection applicable to the states and provides that no state shall make or enforce any law which shall abridge the privileges or immunities of the citizens of the United States, nor shall any state deprive any person of life, liberty, or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws. Malloy v. Hogan, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed. 2d 653 (1964).
The Louisiana Constitution provides similar protection. The Louisiana Constitution of 1974, Article 1 Section 16, provides, in pertinant part, that no person shall be compelled to give evidence against himself. This privilege against self-incrimination is to be liberally construed and is available in investigations as well as prosecutions. In re Groban’s Petition, 352 U.S. 330, 77 S.Ct. 510, 1 L.Ed.2d 376 (1957); In re Parker, 357 So.2d 508 (La.1978).
To sustain the privilege, it need only be evident from the implication of the question, and the setting in which it is asked, that a responsive answer would disclose facts which could be used against the person in future prosecution for crime. In re Parker, supra. The only way an answer *1226 can be compelled in such circumstances is if the person is granted immunity from criminal prosecution for the crime which may be disclosed by his answers. In re Parker, supra.
However, this right against compulsory self-incrimination can be invoked only by the person whose rights are violated. State v. Mitchell, 278 So.2d 48 (La.1973). In the present case, although court ordered interviews of some caretakers at New Bethany may call into question their individual rights against compulsory self-incrimination, nevertheless, New Bethany, as an entity, has no standing to assert a blanket right on behalf of all its officers and employees. Further, New Bethany’s request to amend the order to allow interviews by interrogatories has no legal basis or support.
Interviews with caretakers or parents are absolutely essential in order to investigate allegations of child abuse or neglect. Such interviews are expressly authorized by the statutory scheme. Persons who undertake to care for children, particularly caretakers of children such as the staff and employees of New Bethany, should expect to be questioned concerning the welfare of the children in their custody. The issue of whether Miranda warnings or other safeguards are required is not before us for consideration. However, during the course of an interview, if any individual wishes to exercise his individual right against self-incrimination he may do so.
Whether the questions asked by investigators would violate the Fifth Amendment rights of particular persons must be determined on a case by case basis. If a person subject to the instant court orders refuses to answer questions, a contempt proceeding would appear to be the proper procedural vehicle for determining whether his right against compulsory self-incrimination is applicable. A person could not be held in contempt for failure to answer investigators’ questions if it is shown that the answers would tend to incriminate him, or could possibly lead to criminal prosecution.
Whether the questions posed to New Bethany staff and employees by child protection authorities would be violative of their rights against self-incrimination cannot be determined at this time. As indicated above, the issue must first be dealt with on a case by case basis in the trial court. Therefore, we make no ruling as to whether the Fifth Amendment rights of the individual staff members and employees of New Bethany have been or would be violated in answering interview questions in this case.
CONCLUSION
For the above stated reasons, we find that the ex parte order of June 14, 1988 is invalid insofar as it purports to grant authority for examinations of children and caretakers and allows removal of children at the discretion of child protection authorities. Therefore, those portions of the order are stricken. Those portions allowing entry onto the premises and requiring interviews with the children and their caretakers are valid and are not sticken.
The issues surrounding the judgment of June 15, 1988 are moot, as no relief can be granted.
We find that those portions of the July 7, 1988 ex parte order authorizing child protection authorities to enter the premises of New Bethany, to interview children and their caretakers and to allow physical, psychiatric and psychological examinations of the children are valid.
Those portions of the order which require caretakers to submit to physical, psychiatric and psychological examinations and authorizing removal of children at the discretion of child protection authorities are invalid. We therefore amend the court order to strike those portions which are unauthorized by law but continue the remainder of the order in full force and effect.
We find that there has been no infringement of New Bethany’s right of notice and due process in this case.
As to the right against self-incrimination regarding interviews of caretakers required by LSA-R.S. 14:403, we find that this right must be asserted on a case by case basis in an appropriate proceeding by *1227 the individuals whose rights may be affected.
REVERSED IN PART AND AFFIRMED IN PART.

. Unless otherwise mentioned, the girls and boys referred to in this opinion are all under the age of seventeen and are therefore subject to the provisions of LSA-R.S. 14:403, the Louisiana Juvenile Code and other provisions of law relating to juveniles.

. The issue of whether New Bethany is properly licensed to operate homes for children in this state has not been raised by the parties and is not presently before the court. However, at oral argument, counsel for New Bethany indicated that there was no licensing requirement in this state. This response appears to be in error. New Bethany seems to fall within the definition of a residential home set forth in LSA-R.S. 46:1403, subd. A(8). LSA-R.S. 46:1404 requires licensure of child care facilities in this state, even when operated by church agencies. Such facilities operating without proper licensing are subject to sanctions. LSA-R.S. 46:1421— 46:1422. Facilities licensed pursuant to LSA-R. S. 46:1401 et seq are subject to periodic inspections and must comply with administrative regulations promulgated by the Department of Health and Human Resources.

. We are not here concerned with the traditional scheme of law enforcement investigation and procedures such as arrests, search warrants, grand jury proceedings and other traditional criminal law enforcement techniques.

. The statute does not require that each step of the proceedings and investigation of reports of abuse or neglect must be carried out under court order. Occasions may arise as they did in the instant case in July, where the preliminary stages of investigation may be undertaken and may be concluded before a court order is required. In some instances, a court order may contain authorization for various types of investigation such as entry, examinations and removal of children if based upon good cause shown in the supporting affidavits.

. In addition, we note that in brief and at oral argument the State specifically stated that it is not seeking examinations of the caretakers pursuant to the June 14 order or the July 7 order and has withdrawn those requests.